CHARLES MARSHALL, by FRED MARSHALL,, His Next Friend, Appellant, v. KANSAS CITY, MISSOURI.

Division Two, February 23, 1923.

1. **EVIDENCE: Cross-Examination: Conclusion.** Where plaintiff's witness was asked on direct examination to explain the city's plans for improving a street, and what provision was made in the plans for parking between the curb and the sidewalk proper, it was not error to permit him to testify on cross-examination that no provision was made for the use of the street other than the two boards over the fill provided for pedestrians.

2. ———: **Temporary Walk: Subsequent Betterment.** Where the city, in improving a public street for future use, had filled a ravine crossing the street with loose earth, and on the embankment had laid a temporary walk, over which plaintiff, a child seven or eight years old, in playfully throwing rocks, had crossed and fallen down the embankment, it was not error to refuse to permit his witness to testify that four months later another set of planks were laid, increasing the width of the walk, with a railing around the edge of the fill and along the edge of the boards, there being no contention that the temporary walk was defectively constructed or out of repair, but plaintiff's contention being that the balance of the space that was to be used for a sidewalk, outside of the tempo-

rary walk, should have been covered by a proper sidewalk at the time of the accident, and that he was injured by reason of its absence while crossing the temporary walk to throw a large rock down the embankment.

3. ———: ———: ———: Withdrawing Street From Public Travel: Damages to Child. A city has the legal right to enact an ordinance declaring that "whenever a sidewalk is hereafter laid in any public highway, all that part of such highway between the sidewalk and the property line nearest thereto, and between the sidewalk and the curb line nearest thereto, is withdrawn from travel," and by such ordinance to limit its liability to such damages as may be sustained on account of its failure to have a walk in proper condition at the time of an injury to a child playing in the street.

4. NEGLIGENCE: Narrow Walk Over Fill. Where a city, in improving a street for future use, has filled a ravine crossing the street with loose earth and laid a temporary walk on the embankment, awaiting the settling of the earth to construct a more substantial sidewalk, it is not liable in damages for its failure to cover the whole space that would be occupied by said future sidewalk, to a child who, playfully throwing rocks, crossed the temporary walk at right angles and in throwing a large rock rolled down the embankment and was injured.

5. ———: ———: Evidence of Subsequent Enlargement. Where the city, in improving a pubic street, filled with loose earth a ravine which crossed it and laid a narrow board-walk across the fill, it thereby gave notice that only so much of the street was open for public use as was occupied by the walk, and evidence that it subsequently widened the walk to the regulation width of granitoid sidewalks and protected it by erecting railings along its edges was not admissible, either to show that its failure to construct a walk of the regulation width was negligence, or to show that it recognized that it was its duty to have enlarged the walk before a child crossed it at right angles and in throwing a large rock fell down the embankment.

6. ———: Accident: No Liability. The city, in improving a public street had filled a ravine crossing it with loose earth, and thereby created an embankment four and a half feet high. A cement sidewalk was constructed along the street to one end of the embankment, but from there on to the other end a walk of two boards was laid, because of the impracticability of constructing a cement walk on a fill of that depth until the loose earth had settled and become firm. Plaintiff, seven or eight years of age, and another child a year or so younger, took loose stones from one side of the embankment across the boardwalk and threw them down the other side. When plaintiff, having brought a large stone across the

walk, was attempting to roll it down the embankment, he fell and rolled down himself and was injured. *Held*, that his injuries were the result of an accident occasioned by his own voluntary act, and there was no actionable negligence on the part of the city.

Appeal from Jackson Circuit Court.—*Hon. Allen C. Southern*, Judge.

AFFIRMED.

*John Hyde, Garrett, Howell & Boley,* and *Atwood, Wickersham, Hill, Levis & Chilcott* for appellant.

(1) The admission of the testimony of witness Waddell that no provision was attempted to be made for use of any part of the street across the fill other than the board walk was erroneous, and prejudicial to plaintiff, because said testimony was a conclusion of the witness and, therefore, invaded the province of the jury. (a) If the space along the east side of the board walk was within the boundaries of the street, and was habitually used by the public with sufficient knowledge (actual or constructive) on the part of defendant of that fact, defendant was responsible for the maintenance of said space. Benton v. St. Louis, 217 Mo. 687; Coffey v. Carthage, 186 Mo. 573; Beaudeau v. Cape Girardeau, 71 Mo. 392; Meiners v. St. Louis, 130 Mo. 274; Maus v. Springfield, 101 Mo. 613; Golden v. Clinton, 54 Mo. App. 100; Stephens v. Macon, 83 Mo. 345; Donoho v. Iron Works, 75 Mo. 401. (b) As the question of whether or not said space was part of a public street and walkway, for the maintenance of which the city was responsible, was one of the ultimate facts in issue, the admission of this conclusion constituted error. Taylor v. Railroad, 185 Mo. 239; Heberling v. Warrensburg, 133 Mo. App. 547; Eubank v. Edina, 88 Mo. 655; Boettger v. Iron Co., 136 Mo. 536; Langston v. Railway Co., 147 Mo. 465; Gutridge v. Railway, 94 Mo. 472; Castanie v. Railway Co., 249 Mo. 192; Ganz v. Ry. Co., 220 S. W. 497; City of Marshall v.

McAllister, 22 Tex. Civ. App. 214; Herndon v. Salt Lake City, 34 Utah, 65; 22 C. J. 502.   (2) The court erred in refusing to permit witness Waddell to testify, on his re-direct examination, that at the time he inspected the scene of plaintiff's injury additional boards had been laid in the space to the east of the boards that were there at the time of plaintiff's injury and also that a railing had been constructed at the place.   (a) Defendant had taken the initiative in seeking and obtaining similar testimony and testimony as to some of the physical conditions existing there; therefore, defendant waived the witness's incompetency, and plaintiff had a right to complete the inquiry along that line.   Hume v. Hopkins, 140 Mo. 75; Nichols v. Nichols, 147 Mo. 403; City of E. Chicago v. Gilbert, 59 Ind. App. 613; State v. Sinigal, 138 La. 469; Larson v. City of Sedro-Woolley, 49 Wash. 134; State v. McKnight, 21 N. M. 14; Simmons v. Accident Assn., 79 Neb. 20.   (b) It was competent for plaintiff to show acts of defendant in relation to the place in controversy as bearing on the issues of whether or not said place was part of the street, and, therefore, under the control of defendant, and whether or not defendant recognized responsibility on its part for the maintenance of said place.   Benton v. St. Louis, 217 Mo. 709; Wright v. Hines, 235 S. W. 832; Hemphill v. City of Morehouse, 162 Mo. App. 575; Brown v. Borough of Towanda, 24 Pa. Super. 378; Sprague v. Rochester, 64 N. Y. Supp. 846, 52 App. Div. 53.   (3) The signed written statement of plaintiff's witness, Low, which plaintiff offered in evidence, was competent.   State v. Sharp, 183 Mo. 715; State v. Maggard, 250 Mo. 335.   (4) It was error, and prejudicial to plaintiff, to permit defendant to read to the jury excerpts or detached portions of testimony given by plaintiff on a former trial instead of reading the whole of said testimony and reading same in the order in which it was given.   Littig v. Heating Co., 237 S. W. 785.   (5) The court erred in sustaining the objection to the statement by plaintiff's counsel that defendant had a right

to call plaintiff as a witness, and in rebuking counsel for making said statement. Turnbow v. Rys. Co., 211 S. W. 41.

John B. Pew and Ilus M. Lee for respondent.

(1) The court did not err in permitting plaintiff's witness Waddell to say upon cross-examination that a certain photograph of the place disclosed no provision for the use of any part of the street over the fill other than what was provided by the board sidewalk. Ely v. St. Louis, 181 Mo. 723; Colton v. Kansas City, 162 Mo. App. 429; Smith v. City of Marceline, 198 S. W. (Mo. App.) 1116; Robinson v. Kansas City, 179 Mo. App. 211; Williams v. St. Joseph, 166 Mo. App. 299. (2) The court did not err in refusing to allow plaintiff to show certain changes and extensions made in the board walk long subsequent to the date of the accident. (3) The court did not err in refusing to permit plaintiff to read in evidence a written statement of plaintiff's witness Low. Flach v. Ball, 240 S. W. (Mo. App.) 465; Conrad v. Griffey, 52 U. S. 480, 491. (4) There was no error in permitting the defendant to read portions of plaintiff's testimony given on a former trial of the case.

RAILEY, C.—This action was commenced in the Circuit Court of Jackson County, Missouri, on April 23, 1919, by Fred Marshall, as next friend of Charles Marshall, a minor, to recover damages alleged to have been sustained by said minor on March 21, 1918, in falling down an embankment near a wooden sidewalk in Kansas City, Missouri. The plaintiff, at the time of his injury, was between seven and eight years of age. It is claimed that, on the date in question, plaintiff and another boy, Fenton Kirk, some two years younger than plaintiff, were playing upon an embankment made by raising the grade of Spruce Street, a north-and-south street, between Twenty-ninth and Thirtieth streets, east-and-west

streets, and that while so playing, as stated in the peti-
tion, "a portion of the earth of said way caved, slid,
moved and slipped, causing plaintiff to be thrown from
his position and to fall from said public way down said
embankment."

A ravine crossed Spruce Street at right angles, and
as a part of the plan adopted by the city in carrying
Spruce Street over this ravine, a large wooden or box
culvert was laid across Spruce Street, at the bottom of
the ravine, for the purpose of carrying water collected
in this ravine across the street. This wooden culvert
was high enough to allow a man to walk through it. A
photograph shows the culvert to be approximately
square. After said culvert was placed in the street, loose
dirt, obtained by lowering the grade of Spruce Street at
a point south of the ravine, was dumped on either side
and upon top of the culvert, thus forming a fill, or em-
bankment, in and along Spruce Street. Under this plan,
the grade of Spruce Street was raised to a height of four
and one-half feet above the top of the wooden culvert.
Spruce Street was not paved over this fill. A five-foot
cement sidewalk ran along the east side of Spruce Street
to the south edge of the fill. The cement sidewalk was
not carried on northward over the fill, because of the im-
practicability of laying a cement walk on a fill of this
depth until it had been allowed to settle, for at least two
years. On account of this situation, a sidewalk, consist-
ing of two ten-inch boards, placed side by side, with a
space between them of about three-quarters of an inch,
was laid from the north terminus of the cement sidewalk,
on over the fill. A general idea of the situation was
shown by reference to exhibits 3, 5 and 8 offered in evi-
dence (photographs). Exhibit 3 was made with the
camera looking south; exhibit 8 is looking north, and ex-
hibit 5 shows the east end of the culvert and the embank-
ment of earth above, down which it is claimed plaintiff
fell.

The plaintiff did not testify as a witness at the trial,

although he was present throughout the trial. As to the facts surrounding the accident, plaintiff's case rests upon the testimony of the boy, Fenton Kirk. The testimony of the latter on direct examination tended to prove that he and plaintiff were engaged in throwing rocks down the side of said embankment, and over the end of the culvert; that while so engaged, the embankment near the board walk caved in, causing plaintiff to slip and fall down the embankment into the creek. On photograph marked exhibit 3, the Kirk boy pointed out a black dot (made in ink) as marking the place where plaintiff was standing on the east side of the board walk when the embankment caved. On cross-examination the Kirk boy said he and plaintiff had been rolling rocks down this embankment for about an hour; that they carried the rocks from the middle of the street, east of the board walk some three or four feet, and to the place where the slope turns abruptly downward, then turned the rocks loose, "give them a little push" and in that way rolled them down the embankment; that the rocks were heavy to carry; that some of them were as large as a man's head; that they were watching the rocks as they were thrown down; that he had forgotten where plaintiff lit in the fall. The Kirk boy further testified that when the earth caved plaintiff fell on his back, with his head toward Thirty-First Street; that while lying still on his back, at a place about two feet from the board walk, he rolled over once to get up, and rolled down the embankment. He further testified as follows:

"Q. But he was lying there still when he started rolling? A. Yes, sir.

"Q. Is that right? A. Yes, sir.

"Q. That was after the dirt had fallen and caved in? A. Yes, sir.

"Q. He was lying there still on his back? A. Yes, sir."

The evidence in behalf of respondent tends to show that plaintiff and the little Kirk boy got heavy rocks

from Spruce Street, carried them across the narrow board walk to, or near, the edge of the dump and rolled them down the embankment; that while in the act of throwing a heavy rock, plaintiff's feet slipped on the wet ground and caused him to fall down the embankment as the result of a mere accident.

Mr. Julian Kerneckel, assistant city counselor, testified that, in the presence of his mother, he talked with plaintiff at the place of the accident; that at the request of Mr. Kerneckel, plaintiff placed himself in the same position which he occupied when he fell, which was from four to four and one-half feet east of the board walk; that plaintiff said nothing about the earth giving away but, on the contrary, said he picked up a rock, and was about to throw it, when he lost his balance and went over; that, in the presence of plaintiff's mother, he reduced plaintiff's statement to writing, which was signed by plaintiff and his mother, and which reads as follows:

"I am seven years old and will soon be eight. I went out in the street and got a rock and was standing at top of bank and was going to throw it when I slipped and went down the bank and over the edge of the wooden sewer."

Mr. George W. Meyer, assistant city counselor, testified that he interviewed the witness Fenton Kirk concerning this accident; that Fenton said, while he and plaintiff were throwing rocks down the embankment, plaintiff slipped and fell; that the Kirk boy said nothing at all about any caving of the embankment.

Defendant offered in evidence the written statement of Fenton Kirk, which contains the following:

"Charles [plaintiff] was standing at the very edge of the incline, had just thrown a rock into the crick below when his foot slipped in the mud on the edge of the bank and he rolled down the hill and over the bridge into the bed of the creek below. The three boys Charles and Clarence Marshall and Fenton Kirk were playing around the bridge a little while before Charles Marshall fell, and

the children had been throwing stones into the creek and playing on top the hill and around the scene of the accident before Charles was hurt."

Mr. A. F. Smith, a practicing lawyer in Kansas City for many years, testified that, while assistant city counselor of Kansas City, he had charge of the defense of this case; that he and witness Kerneckel went together to the scene of the accident, after getting plaintiff and his mother to go with them; that on this occasion plaintiff pointed out where he was standing when he fell, which was either on or just down the brow of the embankment, from which position plaintiff said he slipped, while in the act of throwing a rock, down the embankment; that plaintiff said nothing about the embankment breaking away, but, on the contrary, that it was wet and he slipped.

The defendant read from plaintiff's testimony given on a former trial of the case, where he testified that while throwing rocks in the water under the culvert, his feet slipped on the wet ground, causing him to fall over the end of the culvert; that he did not tell defendant's witnesses that the earth gave away; that his feet slipped, because the earth was wet, and that is what caused him to fall.    The evidence of defendant tended to show that plaintiff's fall was brought about by purely accidental causes.

The jury found in favor of defendant and plaintiff appealed.

The matters complained of by appellant will be considered in the opinion.

I.   Appellant complains of the trial court's action **Conclusion** in permitting Robert W. Waddell to testify on **of Witness.** cross-examination as follows:

"Q.   And no provision is attempted to be made for any person using any other part of the street over the fill other than what is provided by the two boards? . . . A.   No, sir, there is no provision made for using any other part."

The foregoing was objected to by counsel for plaintiff, on the ground that it called for a conclusion.

Mr. Waddell was sworn as a witness in behalf of appellant, and, after stating he was city engineer of defendant, was examined as follows by plaintiff's counsel:

"Q. Have you under your official custody and control maps and drawings showing the measurements of the various streets of this city and their dedication and setting them apart as public highways? A. Yes, sir."

After being examined as to the plans concerning the improvement of Spruce Street, the following occurred:

"Q. And what provision is made in the plans for parking between the curbing and the sidewalk proper, if any? A. The sidewalk space is graded to the established grade of the street and then the sidewalk is put in and nothing is done to the dirt between the edge of the sidewalk proper and the curb."

At the instance of plaintiff, said witness further testified:

"Q. And in accordance with the plans you have in mind there and in accordance with the street as dedicated and set apart there, would that be the location and the proper location of that sidewalk, substantially? A. Yes, sir."

On cross-examination, counsel for defendant, in referring to the same matters brought out by plaintiff in chief, was asked the question complained of and, in legal effect, simply stated that the plans for improving said street did not contemplate that the street in its then condition, was to be used by the public, except in passing over the board sidewalk. The witness was qualified to explain the plans for improving the street, was asked to do so by plaintiff, and was examined on the same general subject by defendant. We are of the opinion, that no error was committed in permitting witness to testify on cross-examination as above indicated. In view of the line of examination of said witness in behalf of appellant, the latter is in no position to complain of the cross-examination aforesaid.

II.  It is contended in behalf of appellant that the trial court erred in refusing to permit Waddell to testify that he visited the scene of the accident, in July, 1919, *after* plaintiff's injury on March 21, 1918, and found that another set of planking had been laid on the east side of the two boards, making it substantially the width of the granitoid walk, with a railing around the edge of the fill, and on the edge of the boards.

*Temporary Walk: Later Improvement.*

We are of the opinion that the court committed no error in excluding the above evidence.  It is not claimed that the two boards placed parallel with each other across the newly made ground were improperly constructed, nor that they were unsafe for persons who were passing along the same.  In other words, the above testimony was not offered for the purpose of showing that the sidewalk constructed of two boards had become out of repair, or that plaintiff was injured by any defect in the two-board walk as constructed.  On the other hand, it was plaintiff's contention, that the balance of the space that was to be used for sidewalk, outside of the two boards, should have been covered by a proper sidewalk at the time of the accident, and that plaintiff was injured by reason of its absence, while crossing the board walk at right angles, with a large rock to roll down the embankment.  The city in its governmental capacity was grading and improving Spruce Avenue for future use.  The embankment intended for a future sidewalk on the east side, was composed of soft dirt, which had to settle before a proper granitoid walk could be laid thereon.  As a matter of public convenience, while making the above improvement, and to relieve the traveling public who came that way, from encountering this soft earth in damp or wet weather, the city placed these two boards on the east side for temporary use and, in so doing, by implication at least, announced to the public that no other portion of the sidewalk space was then intended for public use, aside from the two-board walk aforesaid.

Section 1 of ordinance numbered 20787, of Kansas City, Missouri, passed in 1914, provides that: ''Whenever a sidewalk is now or shall hereafter be laid in any public highway, all that part of such public highway between the sidewalk and the property line nearest thereto, and between the sidewalk and the curb line nearest thereto, is withdrawn from travel,'' etc.

Did respondent have the legal right to limit its liability to such damages as might be sustained on account of its failure to have the two-board walk in proper condition at the time of plaintiff's injury? We are of the opinion that this inquiry should be answered in the affirmative. [Walker v. Kansas City, 99 Mo. l. c. 652; Hunter v. Weston, 111 Mo. l. c. 184; Baldwin v. Springfield, 141 Mo. l. c. 212; Kossman v. St. Louis, 153 Mo. l. c. 299; Ely v. St. Louis, 181 Mo. l. c. 729-30-1; Jackson v. Sedalia, 193 Mo. App. l. c. 601, 187 S. W. 127; 4 Dillon on Municipal Corps. (5 Ed.) sec. 1707, p. 2990.]

The principle of law which should govern in a case of this character, is well stated by Brace, J., in Walker v. Kansas City, 99 Mo. l. c. 652, where it is said: ''A city is not necessarily required to open or put all of its streets in a condition for public travel, or all parts of its streets in such condition, but when it does open and undertake to put a street in condition for such travel as a whole, or a part thereof, it must keep such street, or such part thereof as it does undertake to open and put in such condition in its entirety, reasonably safe for such travel.''

The board walk in controvery complied with the above requirement, and was not defective.

In Ely v. St. Louis, 181 Mo. 723, plaintiff, on a dark night, while walking along a portion of a public street which had for ten years been used by pedestrians as a sidewalk, fell into a hole which had been caused by the rains, and received severe injuries. The hole was about two feet wide and three feet deep. Its existence was known to defendant, or could have been known by the

exercise of ordinary care. The street had been established by ordinance in 1885, eighty-five feet wide. In 1891, an ordinance was passed requiring the street at this point to be partially graded. Pursuant to the ordinance a wagon road was made on the western side of the street. Nothing was done to the remainder. But pedestrians had traveled along the east side, and had worn a path there. There was nothing to designate it as a passway for pedestrians except the foot-worn path. There was never any sidewalk there. VALLIANT, J., closed the opinion in the above case as follows:

"In the case at bar the city lawfully exercised its governmental discretion to grade and prepare for use only the wagon roadway in part of the street; it was not required to grade and improve the whole eighty-foot space and build sidewalks on it, and therefore is not liable for not having done so. The path through the weeds and over the uneven surface spoke for itself, and told every one that there was no sidewalk there, and it invited no one to use it at the city's expense. The city was not responsible for the condition of that path and therefore it will not be necessary to decide whether by the plaintiff's own evidence he was negligent in travelling the path under the circumstances."

The plaintiff was non-suited in the court below, and said ruling was affirmed here.

In Benton v. St. Louis, 217 Mo. 691 and following, so strongly relied on by appellant's counsel, a boy six or seven years of age was drowned, at a place known as "Bruno Avenue," and his father and mother sued defendant for damages, on the theory that it was the duty of the city to keep that part of the highway in proper repair at the place where deceased was drowned. The most casual reading of the Benton Case will disclose that the facts were entirely different from those at bar. In the case before us, the city had the right to put down a two-board walk for temporary purposes until the street could be improved. In so doing it declared, in

legal effect, just what the ordinance aforesaid provided, that it had only opened for public use at that time the ground occupied by the two-board walk. It was guilty of no negligence in constructing the latter, and plaintiff was not using it as a sidewalk at the time of his injury. The board walk was not the proximate cause of his injury, and the ground covered thereby was the only portion of the highway which the city invited the public to use as a walk.

(a)    The question propounded to Waddell in respect to an alleged addition to the board walk sixteen months after the accident, was inadmissible to establish negligence on the part of defendant, in a personal injury case of this character. [Ely v. Ry. Co., 77 Mo. 34; Hipsley v. Ry. Co., 88 Mo. 348; Alcorn v. Ry. Co., 108 Mo. 86; Mahaney v. Ry. Co., 108 Mo. l. c. 200; Bailey v. Kansas City, 189 Mo. l. c. 511; Schermer v. McMahon, 108 Mo. App. 36; Clonts v. Gas Light Co., 160 Mo. App. l. c. 476.]

(b)    Appellant's counsel do not appear to controvert the principle of law announced in the preceding sub-proposition "(a)," but insist that such evidence was proper to show the city recognized its obligation to enlarge said board walk, etc.

In Brennan v. City of St. Louis, 92 Mo. l. c. 488, which is the leading case on this subject, it is said: "But it seems such evidence may be received, for the purpose of showing that the defect was one which the city was bound to repair."

The other cases relied on by appellant are to the same effect. The most casual examination of these cases will disclose that they have no application to the case in hand. If the board walk, as constructed at the time of the accident, had become defective, and the defendant had subsequently repaired the same, it would tend to show that defendant recognized such defect, as one which it was bound to repair. As no defect existed in respect to the board walk, the above authorities are inapplicable.

Again, if defendant had the legal right to say what part of the walk it would open for public use, when the board walk was constructed, it had the same legal right, as the street improvement progressed, to widen the board walk and place any safe guards there it might deem necessary. This could not be charged as a duty devolving on defendant to make these improvements in the first instance. In other words, the defendant had the same legal right to extend its jurisdiction over the walk when it widened the same, as when it constructed the original board walk.

We are of the opinion that the foregoing contention of appellant is unsound, and that the court committed no error in excluding the proffered testimony of Waddell as to the additional board walk found on the side of the original walk sixteen months after the accident. The city had the right to place the original board walk as it did, and was guilty of no negligence in so doing. It had the same right to increase the width of the board walk, as it had to construct the original walk. The plaintiff was not injured on the original walk, nor while using the same. His rights must be determined by conditions which existed at the time of his injury. The new boards were not placed to cover any defect in the original board walk, for none existed and, hence, the cases relied on as to subsequent repairs have no application.

III. The trial court is charged with error in excluding as evidence, a written statement of S. J. Low, offered by plaintiff, as follows:

**Written Statement.**

"Nov. 14, 1920.

"Charles Marshall was west of east line of sidewalk up near boards the day he was hurt. I never saw him play east of sidewalk line and I did not closely inspect where ground caved. The whole top of the bank was soft and was a fill. There were no railings and only two planks about eighteen inches wide across this ditch.

"Witness Jno. Hyde,                    S. J. Low."

Low testified at the trial, as a witness for plaintiff, and was confronted on cross-examination by defendant's counsel with a written statement which he had made in reference to the facts in the case, which reads as follows:

> "Kansas City, Missouri,
> December 16, 1919.
>
> "CHARLES MARSHALL, PLAINTIFF, v. KANSAS CITY, DEFENDANT.
>
> "My name is Sagur Low. I live at 2921 Spruce Avenue in Kansas City, Missouri.
>
> "On or about March 21, 1918, it being the day that Charles Marshall, a little boy about seven years old, fell on the east side of Spruce Avenue between 29th and 30th streets in Kansas City, Missouri, I was standing in the vicinity of the scene of the accident. I did not see Chares Marshall fall, but did see him and two other little boys playing on the east side of Spruce Avenue between 29th and 30th streets, where the east side of Spruce slopes from the edge of the parking to the ravine below, and where the culvert runs under Spruce Avenue. Charles Marshall and the other two little boys were playing around this point throwing stones and sliding down the bank from the east edge of Spruce Avenue to the edge of the culvert. I saw Charles Marshall playing in that manner, and also saw him throwing stones from the edge or shelf of the culvert into the creek below. The last time I saw him before he fell he was standing on the slope above the culvert, and I did not see him any more until right after he fell. He apparently fell into the ravine below alongside the culvert.
>
> S. L. Low,
> OK"

The witness was fully examined about the statement given to defendant supra, and plaintiff's counsel then offered in evidence the self-serving statement of Low above quoted. We are of the opinion that the court committed no error in respect to the above matter, as will appear from the well considered opinion of BRUERE, C., in Flach v. Ball, 240 S. W. (Mo. App.) l. c. 467-8; where the authorities relied on by appellant herein are shown to be inapplicable to the facts of this case.

IV.   Appellant contends that the court erred in permitting counsel for respondent to read portions of plain-

tiff's testimony taken at a former trial, and transcribed by the reporter. Defendant's counsel marked such portions of the testimony as they deemed important and as bearing on the merits of the case. The court notified defendant's counsel that if the above questions and answers were admitted, appellant would be permitted to read all that plaintiff testified to in regard to the merits of the case. Thereupon, counsel for respondent read to the jury certain portions of plaintiff's testimony given at the former trial, and plaintiff's counsel was permitted to read to the jury the balance of plaintiff's testimony relating to the same subject.

*Reading Former Testimony.*

The plaintiff did not testify at the trial of this case. The defendant offered certain portions of his testimony taken at the former trial by way of admissions. The court permitted plaintiff's counsel to read all that appellant said on the merits of the case, which had been referred to by defendant's testimony. If any error was committed, it was against defendant in permitting plaintiff's testimony brought out by his own counsel at the former trial to be read as evidence, when he was present in court and failed to testify.

The principles of law announced in Littig v. Heating Co., 292 Mo. 226, 237 S. W. 779, have no application to the facts of this case, as plaintiff got before the jury all, if not more, than he was entitled to under the law. The above contention is accordingly overruled.

V. We are of the opinion, that Instructions "D 1," "D 2," and "D 3," given in behalf of respondent, properly declared the law, and are not subject to the criticisms leveled against them by plaintiff's counsel.

*Instructions.*

VI. Appellant complains of Instruction "D 4," given in behalf of defendant, which reads as follows:

"You are instructed that if you find plaintiff's in-

juries, if any, were merely the result of an accident,
Accident.    that is, a casualty happening without the fault
of any one, then plaintiff cannot recover and
your verdict must be for defendant.''

This instruction not only announces a correct state-
ment of the law, but was warranted by the facts in the
case.

VII.   We have carefully considered all the matters
presented by counsel in their respective briefs, and at
the oral agreement of the case.   We find no error in
the record which would warrant us in disturbing the ver-
dict in·this case.   In addition thereto, we are of the
opinion that no actionable negligence was shown upon
the part of defendant; that plaintiff's unfortunate in-
juries were the result of an accident, occasioned by his
voluntary act in attempting to roll a large rock down
the embankment, and was not occasioned by any defect
in the board walk placed there by respondent for use
of pedestrians as a sidewalk.

The judgment below was for the right party and is
accordingly affirmed.   *Davis* and *Higbee, CC.,* concur.

PER CURIAM:—The foregoing opinion of RAILEY,
C., is adopted as the opinion of the court.   All of the
judges·concur.