## HARRY GRIFFIN v. CITY OF CHILLICOTHE, Appellant.

### Division Two, December 22, 1925.

1. **CITY: Driveway Connecting Abutting Lots with Traveled Street: Maintenance.** A city is ordinarily under no duty to maintain driveways connecting abutting private property with the traveled portion of the street, even though such driveway passes over a portion of the dedicated street which is not open to public travel. It is the right of the city to improve and open for public travel only a portion of the platted and accepted street, and to be free from liability for injuries to persons using the portion of the street which the city has not undertaken to improve and open to public use as a street, although such injuries may be caused by dangerous defects therein.

2. ———: ———: **Injury to Traveler on Parking Space: Invitee.** A strip thirty feet wide in the middle of a street, originally one hundred feet wide and improved and used as a public street throughout its entire width for many years, was paved and bordered by concrete curbing, thus leaving two parkways, about thirty feet wide, between the curbing and the sidewalks, and in this condition the entire street had been maintained for several years prior to the accident to plaintiff. On one side of the sidewalks abutted private lots, which the chamber of commerce leased from the owner for the purpose of establishing and maintaining a public hitch yard, to be used by farmers as a place for hitching and feeding and leaving their teams until needed. A driveway or dirt road, left flush with the curbing, led from the paved portion of the street, across the parkway, to the hitch yard, and in the driveway, and that part of it within the parkway, was a wide and deep hole, into which the wheel of plaintiff's wagon fell as he drove from the pavement towards the hitch yard, and he was thrown upon the ground with such force as to injure him. The chuck hole had existed for five or six weeks, but plaintiff did not know of its existence, and it had rained the night before and the hole was filled with water which concealed its depth, and he did not suspect that the water covered a deep and dangerous hole. There was no evidence that the dirt driveway had been opened or worked by the city at any time prior to the accident or after the thirty-foot pavement was constructed. *Held,* that plaintiff's action against the city to recover damages for personal injuries received when he was thrown from the wagon cannot be maintained, not even on

Griffin v. City of Chillicothe.

the theory that the city invited and consented to the use by the public of the roadway over the parkway, and negligently permitted the chuck hole to exist, or negligently failed to guard and place warning signs about it. The city was under obligation to maintain the paved portion of the street reasonably safe for public travel, but it was under no obligation to so maintain the parkway, or the roadway.

3. ———: ———: ———: **Extensive Use by Public.** The extent of the use by the public of a privately constructed roadway leading from private property to the traveled or paved portion of the street does not measure the liability of the city for injuries to travelers due to defects in the roadway, for such use, even over a parkway, is not attributable to the invitation or consent of the city.

4. ———: **Withdrawal from Public Use: Parking.** The city may withdraw a portion of a wide street, long improved and used for vehicular travel, from further vehicular use, by paving the middle portion thereof, and turning the balance into parking spaces, and in doing so will not be liable to a vehicular traveler who was injured when the wheel of his wagon fell into a chuck hole in the privately-constructed roadway leading from private property across the parkway to the pavement.

Corpus Juris-Cyc. References: Municipal Corporations, 28 Cyc., p. 845, n. 33; p. 846, n. 34; p. 863, n. 24; p. 1348, n. 77 New; p. 1349, n. 85 New; p. 1362, n. 59 New; p. 1364, n. 68, 69; p. 1384, n. 96.

REVERSED.

*Miles Elliott, Paul D. Kitt* and *Don Chapman* for appellant.

(1) The court erred in refusing the peremptory instructions, in the nature of demurrers, requested by defendant at the close of plaintiff's case and at the close of all the evidence. The evidence not only wholly fails to show that defendant city maintained or had anything to do with the hitch yard, but shows beyond denial or contradiction that the city did not maintain or have anything to do with it. Nor was there any evidence that the driveway was devoted by defendant city to public use or that the city was liable for its maintenance. Therefore,

the city was not liable for any injury resulting from a defect in the driveway. (2) A demurrer should have been sustained, for the reason that defendant city was not, and could not be held, liable for any injury due to a defect in the driveway leading from the paved portion of the street to the abutting property, because: (a) The city had the right to determine and fix, as it did, the width of its street to be improved for public vehicle travel, and in doing so it acted in its legislative capacity. Defendant city was not required to pave, prepare or maintain for public vehicle travel the whole street of one hundred feet in width. The evidence shows conclusively that the driveway and the point at which plaintiff sustained his injury was outside of the part of the street designated, provided and wrought by the city for vehicle traffic. The city was without power to deny the abutting owner the right to a passway between the pavement and his property. It could not prevent such owner or his invitees from driving across the parking for access to his abutting property. Such use cannot be said to have been by permission, authority or invitation of defendant or to have constituted a devotion of the driveway to a public use by defendant, and the city could not be held liable for an injury arising from such use. It was for abutting owners to make their own passways or approaches, and the use of such a passway or approach was at the risk of abutting owner, not the city. Ely v. St. Louis, 181 Mo. 730; Marshall v. Kansas City, 249 S. W. 85; Robinson v. Kansas City, 179 Mo. App. 211; Brown v. Glasgow, 57 Mo. 156; Hunter v. Weston, 111 Mo. 184; 4 Dillon on Municipal Corporations (5 Ed.) 1707, Smith on Municipal Corporations, sec. 780; Dries v. St. Joseph, 98 Mo. App. 614; Philbrick v. Pilston, 63 Maine, 477; Elliott v. Mason, 76 N. H. 229; Kelly v. Fond du Lac, 31 Wis. 186; Perkins v. Fayette, 68 Maine, 152, 28 Am. Rep. 84; Smith v. Wendell, 7 Cush. 498; Webster v.Vanceburg, 130 Ky. 320; Harwood v. Oakham, 152 Mass. 425; O'Neil v. New Haven, 67 Atl. 487; Howard v. North Bridgewater, 16 Pick. 189; Martin v. Columbus,

93 Kan. 79, 143 Pac. 421; Atty. General v. Mayor of Boston, 186 Mass. 209; Kellogg v. North Hampton, 4 Gray, 64; Rice v. Montpelier, 19 Vt. 470; Carey v. Hubbardston, 172 Mass. 106; Drew v. Barr, 70 N. H. 147; Shepardson v. Colerain, 13 Met. 55; King v. Fort Ann, 180 N. Y. 496; Goodin v. Des Moines, 55 Iowa, 67; Brown v. Skowhegan, 82 Maine, 273; Metcalf v. Boston, 158 Mass. 284; Sykes v. Pawlet, 43 Vt. 446; McCook v. Parsons, 108 N. W. 167; 3 Dillon on Municipal Corporations (5 Ed.) secs. 1123, 1124.

(b)  The driveway leading from the pavement to the hitch yard was for the sole use and convenience of the abutting owner and his invitees.  When plaintiff left the paved portion of the street, which had been provided by the city for vehicle travel, and entered the driveway he ceased to be a traveller on the public street and his use ceased to be a public use.  His use became that of an invitee of the abutting owner, who owned the use of the driveway.  The abutting owner has no absolute right of access from his property to the pavement.  Indeed, he owns the land to the center of the street, and until the city subjects it to a public use, it is under his control. Piculjan v. Union Co., 234 S. W. 1008; 13 R. C. L. (Highways) secs. 106, 107; 29 C. J. p. 540; Goodfellow Tire Co. v. Detroit, 128 N. W. 410; Village of Sandpoint v. Doyle, 95 Pac. (Ida.) 945; Brownlow v. O'Donoghue Bros., 276 Fed. 636; O'Neil v. New Haven, 67 Atl. (Conn.) 487.

*L. W. Reed* and *Mytton & Parkinson* for respondent.

(1)  The case was tried solely upon the theory that the liability arising out of the happening of the injury to the plaintiff resulted from a breach of the city's duty to exercise ordinary care to maintain a portion of its street, which the public were invited to use and used, in a reasonably safe condition for travel.  This defect in the street was not in front of the Chamber of Commerce tract, but south of it, nor was the defect one of construction or such a one as would give rise to a liability against an abutting property owner.  Norton v. St. Louis, 97

Mo. 537. (2) A city is required (regardless of whether any other person is or is not liable on account of the same state of facts) to exercise ordinary care to keep every portion of its streets in a reasonably safe condition for the use of the public in the manner in which the city has invited and consented that the public shall use the street at the particular place in the street. Jackson v. Sedalia, 193 Mo. App. 597; Benton v. St. Louis 217 Mo. 687; Walker v. Kansas City, 99 Mo. 652; Smith v. St. Joseph, 250 S. W. 616; Brigman v. St. Joseph, 251 S. W. 724; Drake v. Kansas City, 190 Mo. 370; Coffee v. Carthage, 186 Mo. 582; Powers v. St. Joseph, 91 Mo. App. 55; Fockler v. Kansas City, 94 Mo. App. 464; Baldwin v. Springfield, 141 Mo. 205; Burnes v. St. Joseph, 91 Mo. App. 489; Heather v. Palmyra, 245 S. W. 390; Stark v. Lancaster, 57 N. H. 88; Stack v. Portsmouth, 52 N. H. 224.

BLAIR, J.—Action in damages for personal injuries. The verdict of the jury assessed plaintiff's damages at the sum of $25,000. After compulsory *remittitur,* judgment was entered for plaintiff in the sum of $12,000. Defendant has appealed.

The undisputed facts are that Washington Street is a north-and-south public street in the city of Chillicothe. It is intersected by Ann and Clay streets. Such is the location. Washington Street was originally laid out as a street one hundred feet wide, and was improved and used as a public street throughout the entire width for many years. Several years before the accident in question a strip thirty feet wide in the center of the street had been paved, leaving two parkways between the paved portion and sidewalks, about thirty feet wide. On each side of the paved portion, concrete curbing five or six inches above the top of the pavement and of about the same width had been constructed.

On the east side of Washington Street and between Ann and Clay streets was a lot or lots 120 by 120 feet used as a public hitch yard, where farmers drove their teams and wagons, fed their teams and left them until

needed. This lot was leased by the Chillicothe Chamber of Commerce from the owners for the purpose of operating and maintaining such hitch yard. The premises were used for other purposes, such as a meeting place for private business and social purposes, trading horses, etc. A sort of fair or farmers' congress was held there annually for several years. This fair seems to have been sponsored by the Chamber of Commerce. Teams and wagons were sometimes left on the parkway in front of the lot. The use of the hitch yard was free to such of the public as desired to use it.

At three places the curbing on the east side of a brick pavement had been left flush with the pavement when it was constructed or had been cut down to such level to permit ingress to and egress from the abutting property. Two of these openings were opposite the hitch yard maintained by the Chamber of Commerce. A third opening was opposite the north side of the lot adjacent to the hitch yard on the south. The latter opening was used by teams and wagons moving along Washington Street from the south into said hitch yard and by those persons leaving the hitch yard and going south on said street. Openings leading into other abutting property are shown on the plat; but they are not involved here. A well worn dirt roadway extended from the south opening in the curbing over the thirty-foot parking into the hitch yard. There is no proof that such dirt roadway had ever been opened, improved or worked by the city prior to the accident and after the thirty-foot pavement was constructed.

On the morning of April 23, 1921, plaintiff drove his team and wagon north upon Washington Street and turned into the south opening through the curbing to go into the hitch yard. A large and deep hole existed at the time in the roadway over the parking just inside the curb and outside of the paved portion of the street. The right front wheel of plaintiff's wagon dropped into such chuck hole. Plaintiff was seated on the wagon seat and was thrown out upon the ground with such force as to

injure him severely. It had rained the night before, and the hole in question was filled with water which concealed its depth. There was evidence tending to show that plaintiff saw the water, but did not suspect that it covered a deep and dangerous hole. Plaintiff testified that it had been two or three months since he had driven into the hitch yard through that opening. There was testimony tending to show that such hole had existed for five or six weeks before the accident occurred.

The foregoing is a sufficient statement of the facts for a consideration of the main contention of defendant that its demurrer to the evidence should have been sustained. Some further statement of the facts may be required for a proper understanding of other questions in the case, if we conclude that plaintiff made a case for the jury.

In substance, the negligence alleged in the amended petition and now relied upon by plaintiff is that the city invited and consented to the use of the roadway over the parking by the public, and negligently permitted a chuck hole to exist in the street and in such roadway portion leading from the paved part of the street into the hitch yard and that the city negligently failed to guard said hole or to place any warning signs thereabout and that the city knew of the existence of such dangerous hole for a sufficient length of time before the accident to have repaired same before plaintiff was injured, if it had exercised reasonable care.

The answer contained a general denial. It is also alleged that the place of injury was outside of the part of the street prepared by the city for vehicular travel and that the city was not required to keep such place in a reasonably safe condition for travel thereover. Negligence on the part of plaintiff was also alleged as a contributing cause of his injury.

The amended petition alleged that the hitch yard was maintained by the city. The original theory of plaintiff evidently was that, by so maintaining the hitch

yard, the city had invited the general public to come into and use such public facility and that the duty rested upon the city, under such circumstances, to exercise ordinary care to keep the driveways leading into such hitch yard in a reasonably safe condition for travel. The proof failed to establish that the hitch yard was maintained by the city was required to repair or guard a hole, existing with its maintenance. The trial court very properly instructed the jury to that effect and that it could not find for plaintiff upon the ground that the city was operating or maintaining the hitch yard. Defendant insists that plaintiff is not entitled to recover upon the amended petition, unless the city maintained the hitch yard. This question we pass for the present.

The sole question now to be considered is whether the city was required to repair or guard a hole, existing for some time in the driveway over the parking, within the limits of the street as originally laid out, improved and used for a number of years, but outside of the paved portion of the street and its curbing, which designated the place for and confined the limits of ordinary vehicular travel over the street. Plaintiff has abandoned his theory that the city maintained the hitch yard and now contends that the city is liable because it had left (or permitted to be left) openings in the curbing for ingress to and egress from abutting property and had knowledge that such openings and driveways were generally used by the public.

This fairly states the question for determination. The alleged liability of the city is not made to rest upon its legal duty to repair or guard dangerous holes or obstructions outside the traveled portion of the street, but so close thereto as to endanger the public while using such street for vehicular travel in the ordinary way along and parallel with the street. It is clear that, if plaintiff had continued driving upon the paved portion of the street and had not attempted to drive his team and wagon across the parkway into the hitch yard, he would not have been injured by the presence of the chuck hole.

A city is ordinarily under no duty to maintain driveways connecting abutting private property with the traveled portion of the street, even though such driveway passes over a portion of the dedicated street which is not opened for public travel. The right of a city to improve and open for public travel only a portion of the platted and accepted street and its freedom from liability for injuries to persons using a portion of the street, which the city has not undertaken to improve and to open to public use as a street, although such injuries may be caused by dangerous defects therein, are fully established in this State. [Ely v. St. Louis, 181 Mo. 723; Marshall v. Kansas City, 297 Mo. 304.]

In Kellogg v. Inhabitants of Northampton, 4 Gray (70 Mass.) 65, the plaintiff was injured by a defect in a culvert within the located limits of the highway, but not within the traveled part thereof. The culvert formed part of a private passway from the abutting property to the traveled portion of the highway. The selectmen of the town had participated in constructing and maintaining such culvert. BIGELOW J., at page 69, said:

"Under the circumstances, we are of opinion, that the defendants had a right to ask that the jury should be instructed that a town were not necessarily chargeable with damage arising from every defect within the located limits of a highway; that they would not be liable for obstructions or defects in portions of the highway not a part of the traveled path, and not so connected with it that they would affect the safety or convenience of those travelling on the highway and using the traveled path; and that the town would not be legally liable where an injury was sustained by a party using the road for the purpose of passing to or from his private way or path, or his own land, although it was caused by a defect within the limits of the highway as located by law, but outside the part of the road used for public travel."

In Webster v. City of Vanceburg, 130 Ky. l. c. 321, 113 S. W. 140, the facts were quite similar to those in the

case at bar.   The facts stated in the opinion and the opinion itself are brief and we quote same in full:

"The Chesapeake & Ohio Railway freight depot in Vanceburg is situated on Main Street, alongside of which is a pavement.   The lay of the land is such that in getting freight into the depot for shipment, and in getting it out for delivery in town, teamsters have for years crossed the pavement in taking their wagons and drays up to the depot building to load and unload freight.   Appellant, who was a drayman, loaded his dray with baled hay from the depot, or a car by it, and for that purpose and his own convenience had driven his dray upon the pavement. In driving off the pavement the wheels of his dray dropped off at the pavement curbing, one before the other, which was a foot or more lower at that point than the sidewalk.   From the jar thus caused appellant was thrown to the ground and sustained a serious injury to his shoulder.   He sued the city, because it had neglected to so repair the pavement at that point as to make it reasonably safe for its use by wagons having occasion to go to the freight depot.   Upon the evidence showing the foregoing state of facts, the trial court peremptorily instructed the jury to return a verdict for the defendant city, of which appellant complains on this appeal.

"The sidewalks of a city are intended solely for the use of the pedestrians.   While they must be kept in reasonably safe repair for such use, the city is not bound to keep them fit for the use of vehicles also.   If drivers of vehicles nevertheless use them for passage of their wagons, they must do so at their peril.   Nor does the fact that the pavements have been so used by the acquiescence of the city for many years affect its liability in the matter, so far as vehicle drivers are concerned.

"It is argued that the way used by appellant was the only practicable way for wagons to reach the depot. Be that as it may, the city was not legally bound to provide a roadway for wagons to the railroad depot, and is not liable for a failure to do so.   If the driver of the wagon saw proper to use ways not provided for such ve-

hicles, he has no legal complaint against the city that they were not fit for the use to which he was putting them. A city's legal duty is not to furnish streets, even where they may be needed; but it is to keep such as it does furnish in a reasonably safe condition for use for purposes for which they are provided—sidewalks for pedestrians; roadways for vehicles and horses. Judgment affirmed.''

In O'Neil v. City of New Haven, 67 Atl. (Conn.) 487, the facts were different from those in the case at bar, but the case was ruled upon the same principles of law which control here. Plaintiff was a teamster in the employ of the city. He was hauling crushed stone for the city and was required to have his load weighed. The scales, owned by private persons, were located within the highway limits and outside that portion of the highway maintained for public travel. As plaintiff drove his team and cart upon the platform of the scales, such platform gave way and injured him. He recovered only nominal damages and appealed. The city evidently did not appeal. The court held that plaintiff was not entitled to recover at all upon the count of his complaint upon which he was permitted to recover below and affirmed the judgment upon plaintiff's appeal. PRENTICE, J., at page 488, said:

''The delict charged against the defendant as the basis of recovery upon the one count pursued was its failure to perform the duty which it owed to him as a traveler upon one of its highways.'' [Citing cases.] ''At the time of the receipt of his injury he was not such a traveler. He had voluntarily departed from the traveled way, and turned aside from his journey for a purpose in no way connected with his passage over the highway. The fact that he had but shortly before been using the street for travel and intended to soon resume his passage over it made him no more a traveler thereon than he would have been had his digression for an independdent purpose been of longer duration and intended to be longer continued. This fact was conclusive against his right to recover substantial damages.''

In Goodin v. City of Des Moines, 55 Iowa, 67, the plaintiff was injured by falling into a deep ditch cut along the side of the traveled street. A path had formerly existed from such street to the church which plaintiff had been attending. The night was dark and she did not know that the ditch had been cut. The trial court had instructed the jury to find for defendant and plaintiff appealed. The Iowa Supreme Court affirmed the judgment. Among other things it said, at page 70:

"The city has full and complete control of the streets and may excavate and fill up the same at its pleasure, but in doing so it cannot encroach on private property for the purpose of erecting barriers, or any other purpose; nor is it bound to provide a safe, or any, way by which the streets may be entered from private property. The citizen or traveler must get into the public ways of a city as best he can."

The facts in that case were not similar to those here, particularly in that the fall occurred from private property and not upon a part of the street dedicated to the city, but not opened for travel. The controlling legal principle is the same.

In Smith v. Inhabitants of Wendell, 7 Cushing (61 Mass.) 498, the plaintiff was injured by reason of the stage coach striking a large granite block lying within the located part of the public highway, but not within the traveled portion thereof. Such granite block constituted an obstruction of the private way leading from the railway station to the public highway. The trial court instructed the jury that if the stone lay within the limits of the highway, as located, obstructing the entrance of the road to the railway station, but not obstructing the roadbed of the public highway worked for north-and-south travel, the town was not liable. The jury accordingly found for the town. The plaintiff's exceptions were disallowed by the Supreme Judicial Court and judgment was entered upon the verdict of the jury. At page 500, DEWEY, J., said:

"It has become well-settled law, that towns are not necessarily chargeable with damage arising from every obstruction within the limits of a located highway. They are not liable for such obstructions in portions of the highway not a part of the travelled path, and not so connected with it that they will affect the security or convenience for travel of those using the travelled path."

Reference was made in the opinion in the above case to Shepardson v. Colerain, 13 Met. (54 Mass.) 55. Defendant here also cites the case. We quote the headnote for the facts and conclusion of the court:

"In a highway, running east and west, the wrought path was changed from the south to the north side of the space between the limits of the highway, leaving a steep descent between the new and the old wrought path; and the old path ceased to be a part of the wrought or traveled pathway. At a right angle with said highway, and running therefrom southerly, was a road leading to the house of A, which road, on a certain day, was wholly obstructed by snow; and there was, on the same day, a private pathway made by A, across his fields, from his house to that part of said highway where the wrought and travelled path had been changed, as aforesaid. While the road leading from said highway to A's house was thus obstructed, he, knowing all the facts, was travelling, in a sleigh, along the newly wrought and travelled path in said highway, and turned his horse southerly, for the purpose of entering upon said private pathway, and in passing down the descent between the new and the old wrought and traveled path, his sleigh was upset, and he received an injury He thereupon brought an action against the town that was bound to repair said highway, to recover damages for the injury which he received by the reason of a defect therein. Held, that the action could not be maintained."

The Shepardson case is like the case at bar in the fact that the injury occurred within the located and dedicated highway, but in the part thereof formerly used for travel but abandoned for a newly made traveled portion.

The liability of defendant city is not determined or measured by the extent of the use of the roadway over the parking by the public in going to and leaving the hitch yard. This was discussed in Brown v. Inhabitants of Skowhegan, 82 Maine, 273, where it was held that extensive use of abutting property by the public did not change the rule of non-liability of the city for injuries caused by defects within the legally located street or highway, but outside of the part thereof provided and maintained for public travel.

The extent of the use made of the roadway through the curbing and over the parking space was not due to any invitation by or consent of the city. Those using the roadway were invited and permitted to be there by the lessee of the hitch yard property, the Chamber of Commerce. The owner and lessee of such property had undoubted right to devote their property to any *legitimate* use they saw fit and the city could not interfere therewith or prevent such *legitimate* use. The abutting owner owns to the center of the street, subject to the easement of the city for such street, and is entitled to means of ingress to and egress from his property to the part of the street set apart and devoted to vehicular traffic. That such is the law is not questioned here.

Nor does the fact that the city had formerly thrown open to vehicular travel and improved the entire width of the street and afterwards had withdrawn portions of the width of the street from such vehicular travel, by paving and curbing only a thirty-foot strip, affect the situation. The city had the right in the first instance to improve for purposes of such travel only a part of the space dedicated as a street. Upon principle no reason appears why it may not, with equal freedom from liability for injuries received from defects in the portion of the street not improved for vehicular travel, withdraw from such travel a portion of the street previously improved and used for such purpose. By paving and curbing a strip only thirty feet wide, the city plainly designated the portion of the street it intended to be used for

vehicular travel and openly and effectually notified all persons using the paved portion of the street that such portion of the street was all it undertook to keep in repair. In the exercise of its governmental authority, the city withdrew the parkway from public travel by vehicles just as effectually as if such parkway had never been opened and improved by it for vehicular travel.

The proof that a mere day laborer, in the employ of the city and after plaintiff's injury occurred, dumped a load of dirt, brickbats, etc., gathered up in cleaning other streets, into the chuck hole which caused plaintiff's injury, does not fasten upon the city the duty to keep in repair the roadway over the parking. The law cast no such duty upon the city. It owed no such duty at the time plaintiff was injured and the act in question could not and did not create a liability or duty where none existed before.

The plaintiff cites a number of authorities which he contends establish the liability of the city. A careful examination of such cases has satisfied us that they are not in point on their facts, regardless of any statements of law made therein. Some of them are cases where a dangerous defect has been permitted to exist so close to the traveled portion of the street or sidewalk as to endanger users thereof while using same in the ordinary manner for the purpose for which such roadway or street was intended and improved. Such cases are of no value here. Jackson v. Sedalia, 193 Mo. App. 597; Walker v. Kansas City, 99 Mo. 647; Coffey v. Carthage, 186 Mo. 573; Powers v. St. Joseph, 91 Mo. App. 55, and Stack v. Portsmouth, 52 N. H. 221, are cases of this sort.

Cases where the defect existed in the opened and used portion of the street or sidewalk, where there was no question that the city had opened and improved that particular part for the use of the traveling public, are likewise of no assistance here. Of such character are Smith v. St. Joseph, 250 S. W. (Mo. App.) 616; Drake v. Kansas City, 190 Mo. 370; Heather v. Palmyra, 245 S. W. (Mo. App.) 390, and Burnes v. St. Joseph, 91 Mo. App.

489.  In the Burnes case the hydrant which injured plaintiff stood in the street about eleven feet from the property line; but the city had improved for use the whole width of the street, including the space where the hydrant stood.  The hydrant had previously been guarded, but such guards had been removed in the improvement of the street.

In other cases dedication as a street or sidewalk and acceptance by the city were held to be properly shown by general and long-continued use by the public.  Such are Brigman v. St. Joseph, 251 S. W. (Mo. App.) 724; Benton v. St. Louis, 217 Mo. 687, and Baldwin v. Springfield, 141 Mo. 205.  In neither of such cases had the city in its governmental capacity designated for public travel only a portion of the street as here.  There the long-continued user by the public as of right of the whole or the part of the street where the injury occurred was not inconsistent with a governmental designation by the city of only a portion of the street for public travel, as is here true.

The only case cited by plaintiff, where the facts are in anywise in point with the case at bar, is Stark v. Lancaster, 57 N. H. 88.  There, as appears by the headnotes, it was held:

"If a town permits a turn-out to exist from the traveled part of its highway to a private way, over adjoining land, with all the characteristic marks of a highway, it will be bound to keep such part of the turn-out as is within the laid out limits of the highway in suitable repair for the travel usually passing over it."

That case is apparently out of harmony with what seems to us to be the great weight of authority.

We think the trial court erred in refusing to instruct the jury that plaintiff was not entitled to recover under the evidence in the case.  There is no controversy concerning the fact that the chuck hole which caused plaintiff's injuries was outside of the portion of the street designated and opened for vehicular travel and

was in a part of the platted street which the city was at the time under no duty to keep in repair. A retrial would not show a different state of facts in this respect.

With the view of the case above outlined, it becomes unnecessary to notice other assignments of error. Judgment reversed. All concur.