13043

PLUNKETT *ET AL.* v. CITY OF AIKEN *ET AL.*

(156 S. E., 245)

December, 1929.

100

*Messrs. Hendersons & Salley,* for appellant,

104

*Messrs. Williams, Croft* and *Busbee,* for respondents,

December 23, 1930.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

This is an action instituted in the Court of Common

Please for Aiken County by W. C. Plunkett, Aiken Civic League, and the park commission for the City of Aiken, against the City of Aiken, the mayor and aldermen, and others, for the purpose of enjoining the defendants from cutting and removing certain trees and shrubbery from the center of Richland Avenue, in the City of Aiken, and widening the traveled portion of the avenue on the south side. The facts giving rise to the questions presented are set out in the agreed statement of facts appearing in the transcript of record, and are further referred to in the decree of his Honor, Circuit Judge William H. Grimball, which decree and statement will be reported.

From the decree on circuit, refusing to vacate the order of temporary injunction, the defendants have appealed to this Court. We do not regard it as necessary to set out the exceptions in full. What we shall say, in our opinion, disposes of the questions raised by the appellants and the additional ground urged by the respondents to sustain the decree.

The main and decisive holdings of the Circuit Judge were declared in this language:

"Now, however, having crystallized the outlines of the two highways and the park, City Council undertakes to make the change as hereinbefore set forth—over the objection of an adjacent landowner. This, in my opinion, the city charter forbids them to do.

"Defendants insist that as the original dedication of the street known as Richland Avenue was of a width of one hundred and fifty feet, the proposed change is not such a change as requires the consent of adjacent landowners under the charter. I cannot agree with this position. The lines of this avenue of highways and park have been fixed, defined, determined, settled and crystallized by the City Council. It would be a change just as great to subtract from the park for the gain of the highways, as it would be to subtract from the highways for the gain of the park. Neither

change can be made, under the terms of the charter, without the consent of the adjacent landowners."

With those holdings, for obvious reasons, we regret we cannot agree.

By reference to the city charter, granted by the General Assembly, the pertinent portion of which is set out in the circuit decree, as well as to Section 4550 of Volume 3 of the Code, it will be observed that "the mayor and aldermen shall have full and exclusive control over all streets, roads and ways in the said city, and it shall be their duty to keep them open and in good repair." The street in question was dedicated as a street, and not a park. The primary purpose of the street was to provide a roadway for public travel, and, when needed for that purpose, the City Council has no power, in the absence of legislative authority, to devote it to any purpose which would interfere with this public use. *Spencer v. Mahon,* 75 S. C., 232, 55 S. E., 321; *Haesloop v. City Council of Charleston,* 123 S. C., 272, 115 S. E., 596.

Since the street in question, as well as other streets of the City of Aiken, was originally laid off 150 feet in width, it is but reasonable to suppose that the town then did not need this entire space for public travel. For the convenience and use of the adjacent landowners, as well as to provide ample ways for travel to the general public, a roadway or driveway was laid off on either side of the street or avenue in question, as was done on other streets of the town. As the entire space of the street was not needed for travel, and trees, shrubbery, and grass are more appealing to the aesthetic sense than weeds, the City Council established, or permitted to be established, parks in the center of the street, between the two roadways or driveways. This use of the street was entirely permissible, so long as the space so used for a park was not needed for public travel. It being the duty of the City Council to keep the street open and in good re-

pair for the use of the public travel, it follows that, when the need arises, it must devote as much of the street as necessary to roadways or driveways.

It is urged, however, that the portion of the charter ■ which provides that "they (the mayor and aldermen) shall have power, with the consent of the adjacent landowners, to close or change all such roads, streets or ways * * * as they may deem conducive to the public convenience, * * *" is controlling. The charter must be read as a whole. It is the duty of the City Council to keep the streets open and in good repair, but they may, with the consent of the adjacent landowners, close or change any street, road, or way within the city, as they may deem conducive to the public convenience, and, when a street, road, or way is so closed or changed, the City Council may "sell the freehold * * * either at private or public sale, as they deem best."

In making the alteration in the condition of the street, no encroachment whatever upon the lands of the plaintiff, Plunkett, or any other adjacent landowner, is contemplated.

It is not proposed to close the street entirely. The ■ main question presented, then, is this : Does the change in the use of a portion of the street from a park to a driveway constitute such change as contemplated by the charter, where it was necessary to secure the consent of the adjacent property owners? We think not. To sustain the holding of the Circuit Judge would be to paralyze the hands of the City Council. They could make no alteration whatever in any street without the consent of every adjacent landowner thereon. The present status of every street would have to be perpetually preserved, unless the consent of every adjacent landowner could be obtained. One such landowner could veto any proposed improvement or alteration. If the consent of an adjacent landowner is a necessary prerequisite to the felling of a tree or the removal of a shrub, such consent would be equally necessary to the planting of a tree or shrub. Likewise that consent would be necessary before the City Council

could pave a street or sidewalk, construct a drain or curbing, install a sewerage or water main, gas pipes, or electric poles and wires, or permit telegraph, telephone, electric light, or trolley companies to construct their poles, wires, or tracks in the streets. Indeed, it would be impossible to make any change from the present exact status of a street without first obtaining the consent of every adjacent landowner, and, having obtained such consent and made the desired change, a new status would be reached, which could not, in turn, be changed without the consent of all the adjacent landowners. We do not think the City of Aiken intended to obtain, or the Legislature intended to grant, such a charter. The charter did not contemplate a change from one public use of a portion of the street to another. The change contemplated by the charter, where the consent of the adjacent landowners must be obtained, was one in the street itself, such as changing its width or location. After making such a change, or closing the street altogether, the freehold of the street, or portion thereof no longer needed for a street, might be sold by the City Council. The charter provision clearly shows that the contemplated change was such as would close the street, or a portion thereof, not longer needed for street purposes, a condition which would not obtain in case of a change from one public use to another.

The City Council has full control of the streets, roads, and ways of the City of Aiken, subject to the limitation that a street may not be closed or changed, as herein indicated, without the consent of the adjacent landowners. The extent to which such streets, roads, and ways are opened for travel, or used for parks, rests wholly in the discretion of the City Council. The exercise of that discretion so long as it is not unreasonable or capricious, is a matter of policy with which the Courts are not concerned. There was not sufficient evidence to show any exercise of arbitrary power or caprice upon the part of the City Council, and we cannot

sustain the decree of the Circuit Judge on this additional ground, as urged by the respondents.

Without attempting a review of the cases which we regard as sustaining our holdings, we point, in addition to the two already cited, to the following authorities: *Chafee v. City of Aiken,* 57 S. C., 507, 35 S. E., 800: *Whitlock v. Town of Jonesville,* 111 S. C., 391, 98 S. E., 142; *Grady v. Greenville,* 129 S. C., 89, 123 S. E., 494; *Padgett v. State Highway Commission,* 150 S. C., 538, 148 S. E., 548; *Emerson v. Kaminski,* 143 S. C., 36, 141 S. E., 108; *Seaboard A. L. Railway v. McFadden,* 156 S. C., 147, 152 S. E., 809.

The judgment of this Court is that the order of the Circuit Judge, refusing to vacate the temporary injunction granted by Mr. Associate Justice Carter, be and the same is hereby reversed, and the said temporary injunction is hereby vacated.

MESSRS. JUSTICES COTHRAN, STABLER and CARTER concur.