ARLEY EBERT, RESPONDENT, v. A. J. KASPER COMPANY, APPELLANT.—
71 S. W. (2d) 859.

Kansas City Court of Appeals. April 30, 1934.

590

W. W. McCanles for respondent.

German & German for appellant.

CAMPBELL, C.—Plaintiff, eighteen years of age, was, on April 4, 1927, employed by the defendant as its "handy man" in its wholesale house in Kansas City. The three-story building in which defendant carried on its business was leased to it about two months prior to the time plaintiff became its employee. A freight elevator which had been installed in the building many years before defendant leased the premises was used in carrying freight between the floors. The elevator, the platform of which was approximately five feet square, was operated by means of a cable. There was a gate at the elevator shaft on each floor at the front of the elevator which could be raised and lowered

by the one operating the elevator. On May 5, 1927, plaintiff placed a drum of coffee on the elevator intending to take it from the first floor to the third floor of the building. He entered the elevator, put it in motion by pulling the control cable, and sat down upon the drum of coffee. When near the third floor he stepped toward the front of the elevator. In relating this circumstance, plaintiff testified:

"And I reached out with my hands like this (indicating), to push that gate up as I went, just as a time saving feature. In doing so, these grooves were oiled to a certain extent, but not very much. Of course, that thing was heavy to lift. When I pushed it up that way, just used myself as a brace, pushed it up and in so doing stepped a little bit too close to the edge."

Plaintiff's right foot was caught and jammed between the elevator and the third floor, resulting in the loss of his great toe and injury to his second toe.

There was a clearance of one-half inch between the elevator floor and the floors in the building. An expert witness testified that a freight elevator "that didn't have an enclosure on it to keep anybody from stepping off, it should have the protection of a toe guard that should push anything off by there."

"Q. What is a toe board and the use of it? A. There are two types of them. Some have them at the bottom where it starts up from the ceiling, slanting. It comes out about four inches, about forty-five degrees. . . . Other types of construction have them up at the top of the floor where you land, maybe that much in height (indicating), and have them sloping or at angle of forty-five degrees. Any time anybody coming up in an elevator that has no protection to keep anybody from putting their foot over there as it comes up, this little projection there tends to push the foot off, or the object, if it happens to be there."

After the accident plaintiff and defendant agreed that the latter would pay the former as though the injury was compensable under the Workmen's Compensation Law. Pursuant to the agreement defendant paid to the plaintiff sums totalling $416.13 and also medical aid in the amount of $315.33. On February 21, 1928, plaintiff, through his next friend, brought this suit, a common law action to recover damages for the injuries which he sustained. He obtained a judgment in the sum of $1800, from which the defendant has appealed.

The petition alleged three grounds of negligence; the first passed out of the case, the others follow:

"(b) In that the said defendant caused, allowed and permitted the floor of said elevator to be built so that in passing the ceiling of the second floor and coming to the third floor, said floor of said elevator was in such close proximity to the aforesaid described floor that there was not sufficient space to prevent cutting off and injuring the plain-

tiff's toe as aforesaid. That the floor of the elevator was so close to the third floor where it passed through same that there was not one-sixteenth of an inch clearance..

"(c) In that the said defendant so constructed the elevator, as aforesaid, that the floor when passing through the space at the third floor of the defendant's plant came so near to the wooded part of the floor of the third story that it left only a clearance of one-sixteenth or one-thirty-second of an inch, which was dangerous, and of which the defendant was well aware, but the defendant did not warn the plaintiff of said dangerous condition, and as result thereof plaintiff caught his toe therein and was injured."

The defendant objected to the evidence tending to show that the absence of toe guard rendered the elevator not reasonably safe on the ground that such negligence was not pleaded. At the close of the evidence the plaintiff obtained leave to amend his petition so as to make paragraphs (b) and (c) read as follows:

"In that the said defendant caused, allowed and permitted the floor of said elevator to be built so that in passing the ceiling of the second floor and coming to the third floor, said floor was in such close proximity to the aforesaid described floor that there was not sufficient space to prevent cutting off and injuring the plaintiff's toe as aforesaid. That the floor of the elevator was so close to the third floor where it passed through same that there was not one-sixteenth of an inch clearance. And that notwithstanding the fact that there was a clearance of only one-half inch, the defendant did not provide or equip said elevator or shaft with a toe board or guard to prevent his getting his foot caught as aforesaid. .

"(c) In that the said defendant so maintained the elevator, as aforesaid, that the floor thereof when passing through the space at the third floor of the defendant's plant, came so near to the wooded part of the third story that it left only a clearance of one-sixteenth or one-thirty-second of an inch, and did not equip said elevator or shaft with a toe board or guard, which was dangerous, and of which the defendant was well aware, but the defendant did not warn the plaintiff of said dangerous condition, and as result thereof plaintiff caught his toe therein and was injured."

The defendant assigns error to the action of the court in refusing to direct verdict in its favor. In support of this insistence the defendant says: (1) No negligence on its part was shown; (2) that plaintiff was guilty of contributory negligence, and (3) that the Workmen's Compensation Law controls.

There was substantial evidence that it was customary to maintain toe boards or guards in elevators such as the one here involved and that the failure to provide such a guard rendered the elevator unsafe. This was sufficient to show negligence on the part of the defendant.

[Martin v. Kline Apparel Co., 249 S. W. 965; Birdsong v. Jones, 30 S. W. (2d) 1094.]

Moreover, one of the defenses was that a toe board was maintained in each floor. Thus, defendant recognized that it was its duty to maintain the guard which the plaintiff says it did not maintain. [Bachman v. Q. O. & K. C. R. R. Co., 274 S. W. 764, 767.]

The defendant says that plaintiff was guilty of contributory negligence for the reason "that he went over to lift up the gate, as the car was approaching the stopping point, in the interest of time, is no excuse at all, and certainly no justification for his negligent act in sticking his foot over the platform edge." There was evidence that plaintiff was performing his task in the usual and customary manner; that other employees of the defendant and one of its chief officers performed the work in the same manner as that in which the plaintiff attempted to perform it. Plaintiff's attention was directed to the raising of the gate. He was not an experienced operator of the elevator, though he had had experience with it during the time he was in the defendant's service. In the circumstances we cannot say as a matter of law that plaintiff was contributorily negligent. [Martin case, supra.]

The contention that the Workmen's Compensation Law governs is dismissed with the observation that there was neither pleading nor proof bringing the parties within the act.

The defendant insists that plaintiff failed to prove that there was "no toe board or guard." The record discloses that plaintiff testified that there was no toe guard in the floor at the time he was hurt. The defendant's vice president testified that between the time his company rented the premises and the time of accident his company made no change in the elevator cage, well, or the elevator equipment.

"Q. In other words, the whole layout with respect to the elevator, it was the same on May 5, 1927, as it was when you rented the building and took possession? A. It was."

A witness for the defendant testified that "at one time, there were toe boards on all floors. At the present time, there is still a toe board on the second floor." Another witness for the defendant testified that he placed the toe board in the floor before the defendant leased the premises; that it was torn off after the accident and that he should have put it back but "never did." The point is ruled against the defendant.

In its assignment of error No. 9 the defendant says that the court erred in giving plaintiff's instructions Numbers 1, 2, 3 and 4. No authority is cited in support of the contention. Instruction No. 1 told the jury that plaintiff was not entitled to a verdict unless it found from the evidence that defendant was guilty of the several acts of negligence alleged and that such negligence caused plaintiff to

be injured. In discussing the instruction the defendant assumes that the evidence failed to support the allegation of negligence in respect to the absence of a toe board. As stated above, there was evidence tending to prove the negligence alleged in the amended petition and, hence, the instruction was not erronous for the reasons assigned. Instruction No. 2 told the jury that the action was not controlled by the Workmen's Compensation Law. The instruction was proper. The defendant does not call attention to any error which it claims inheres in plaintiff's instructions 3 and 4.

Error is assigned to the action of the court in refusing defendant's instructions A, 3, 5, 8, 9, 10, 11, 12, 13, 14 and 15.

Instruction A was a demurrer to the evidence and was properly refused for the reasons hereinbefore stated. Instruction No. 3 said that there was no ordinance requiring defendant to construct a guard or toe board in the elevator. There was no issue on the question as to whether or not there was such an ordinance and the defendant was not entitled to have a false issue injected into the case.

Instruction No. 8 was in effect the same as instruction No. 3.

The defendant concedes in its brief that Instruction No. 9 was in effect a peremptory instruction to find for the defendant. We hold that the case was for the jury, from which it follows that it was proper to refuse the instruction.

The assignment of error in respect to Instructions Numbers 10, 11, 12, and 14, is not elaborated upon in the brief and the assignment is therefore abandoned.

Instruction 13 said that the settlement agreement was binding on the plaintiff. Plaintiff was a minor and the agreement was not binding on him. [Robinson v. Floesch Cons. Co., 236 S. W. 332.]

Instruction 15 was faulty for the reason stated in our discussion of Instruction 13.

The defendant insists that the court erred in refusing to sustain its application for continuance. The defendant objected to the amendment of the petition. The objection was overruled and the amendment made to conform to the evidence. Thereupon, the defendant filed application for continuance and affidavit of surprise, alleging therein that it was unable to have witnesses present to meet the allegation that there was no toe board in the third floor; that if given a continuance it would prove that there was a toe board in the floor at the time of the accident. Two witnesses testified on behalf of the defendant with respect to the question as to whether or not there was a toe board in the floor at the time of the accident. The application and affidavit show that during the noon recess defendant's counsel inspected the elevator shaft in the third floor and discovered that there was evidence that a toe board had been in the floor and that it had been violently torn away. It is manifest that defendant could

tained witnesses to prove the physical condition of the shaft
third floor. It did not choose to do so but preferred to seek
ance. Nor did it make request for a recess in order to secure
s. We cannot say that the court abused its discretion. [Noah
Price Merc. Co., 208 Mo. App. 149; Peterson v. Metropolitan
111 S. W. 37.]

We do not find reversible error in the record. The judgment is
affirmed. *Reynolds, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is
adopted as the opinion of the court. The judgment is affirmed. All
concur.