CONRAD METZ, JR., ADM., ETC., RESPONDENT, v. KANSAS CITY, MISSOURI, APPELLANT.—81 S. W. (2d) 462.

Kansas City Court of Appeals. February 18, 1935.

*Mosman, Rogers & Buzard* and *Louis N. Wolf* for respondent.

*George Kingsley,* City Counselor, *John J. Cosgrove* and *Lambert S. O'Malley,* Assistant City Counselors, for appellant.

REYNOLDS, C.—This cause was instituted by one Marjorie Metz in her lifetime for the recovery of damages for personal injuries alleged to have been received by her by reason of the negligence of defendant. Since the trial in the circuit court and during the pendency of the appeal in this court, she has died; and the cause has been revived in the name of Conrad Metz, Jr., administrator of her estate; and, as such administrator, he has been substituted as plaintiff in her stead. The cause now proceeds under the name and style of "Conrad Metz, Jr., Administrator of the Estate of Marjorie Metz, Deceased, v. Kansas City, Missouri, a Municipal Corporation."

It appears that Seventy-first Street runs east and west and Holmes Street runs north and south, each eighty feet in width, and are intersecting public streets of defendant city; that the city, acting through its park board, about or during the year of 1929, in accordance with the plans and specifications provided therefor by the park board, constructed in the pavement of said streets on the intersection thereof what may be termed a "circular island" surrounded by a heavy concrete curb. Said island was constructed in the direct line of travel upon both of said streets approaching and crossing said intersection from all directions so that vehicular travel on either street and from either direction was required to pass around said island. Said island was entirely surrounded by a roadway forty feet in width, connecting with and forming part of the intersecting streets as they approached the intersection and the island, so that one coming into said intersection with a motor or other vehicle could drive entirely around the island thereon or up to and against it and the curb surrounding it. The island was ninety feet in diameter and projected beyond the intersection a distance of five feet into each of the streets coming into the intersection. The concrete curb surrounding it was some seven inches in height and was so placed as to conform with the curve in the curb of the streets as it had been deflected from a direct line and made to turn on or near the outer lines of such streets as they passed around the island. The deflection of the street curbing began at a point upon each of the approaching intersecting streets ninety-five feet distant from the curb around the island.

The petition, after alleging the character of Holmes and Seventy-first Streets as public streets of the defendant city, duly accepted and opened by it for public travel, alleges that the defendant city,

in opening, establishing, and grading said streets, had negligently and carelessly constructed the same and had, at all times since such construction, negligently and carelessly maintained the island and curb about it, above referred to (describing it), at approximately the center of the intersection of said streets; that such island and curb were so constructed and maintained as to be dangerous to drivers of vehicles and automobiles on said streets and as to render said streets dangerous and unsafe for travel, especially at night; that, on March 9, 1930, and for a long time prior thereto, said island and curb were and had been a nuisance upon said streets; that the defendant city knew and, by the exercise of ordinary care should have known, of the dangerous character of said island and curb at said intersection long prior to the night of March 9, 1930 (the date upon which the plaintiff received the injuries complained of by her), and for a sufficient length of time prior to such date within which, in the exercise of ordinary care and diligence, it could have removed the same therefrom before the time of her injury thereon but it had, nevertheless, negligently continued to maintain the same to the time of her said injuries; that the defendant city, about March 9, 1930, at the time of the injuries complained of by plaintiff, negligently failed and omitted to place warning posts or lighting posts or signals on said park and curb or near thereto or to provide other means of warning drivers of vehicles of the existence of said island and curb upon the intersection of said streets or of the dangerous condition of said streets on account thereof or of the obstruction of said streets thereby; and that no lights were maintained in the vicinity sufficient to enable any one ignorant of the presence of such island and curb, approaching it from any direction upon said streets, to discover such in time to avoid colliding with them, by reason whereof said streets at said intersection were made dangerous and unsafe for public travel, especially at nighttime, and were a nuisance.

It was further alleged that, at or about the hour of two A. M. on March 9, 1930, plaintiff was driving in an automobile north on Holmes Street from a point thereon south of said intersection, at a time when the street was dark, when her automobile ran into and collided with the south side of said island and curb; that, by reason of said streets at said point being insufficiently lighted and by reason of said island and curb being negligently placed in the center of said intersection and by reason of their having been negligently permitted to remain there by defendant city and by reason of the negligent failure of defendant city to place warning lights or signals at or near said island and curb or to provide other means of warning drivers of automobiles and vehicles of their dangerous character upon said streets, she did not discover said island and curb in time to stop or to pre-

vent her automobile from colliding with the same but ran into the same at the south side thereof without noticing their presence and without knowing that they were there.

The petition alleged that, at the time of said collision, the car was being driven by plaintiff at a lawful rate of speed; that the same was wrecked and damaged; and that she sustained serious, permanent, personal injuries by reason of such collision as a result of the careless and negligent actions of the defendant as pleaded. A detailed recital of plaintiff's injuries was set forth in the petition. Her damages were therein alleged to be $15,000, for which she sought recovery.

The answer, which was a second amended, tendered a general denial, followed by pleas of contributory negligence and of violation of certain laws of the State and various ordinances of Kansas City by plaintiff in the operation of her car.

Upon trial had before the court and the jury, a verdict for $2500 was returned in plaintiff's favor; and, from a judgment rendered thereon in said sum in favor of plaintiff, the defendant city, after unsuccessful motions for a new trial and in arrest of judgment, appealed.

The evidence discloses that, at about the hour of two A. M. on March 9, 1930, the plaintiff was driving an automobile, in which she and her husband were riding, north from a point south of the intersection in question when plaintiff ran the automobile against the curb around the island upon such intersection, wrecking and damaging the automobile and severely injuring herself, for which damages and injuries she seeks a recovery in this suit. There was evidence tending to show plaintiff's injuries and the extent thereof and that they were occasioned by the overturning of the car in which she was riding and her being thrown therefrom at the time of striking the curb around the island at said intersection of said highways.

At the close of plaintiff's evidence, a peremptory instruction requested by the defendant was denied by the court. Again at the close of the whole evidence, the defendant requested a peremptory instruction directing a verdict in its behalf, which was by the court denied.

Other facts in the record will be noted in the course of the opinion as and if occasion may require.

### Opinion.

■ Upon this appeal, the appellant presents the four following assignments of error:

(1) The court erred in refusing to give defendant's instruction in the nature of a demurrer to the evidence offered at the close of plaintiff's evidence and also at the close of all the evidence.

(2) The court erred in giving respondent's instruction No. One over the objection of appellant.

(3) The court erred in admitting incompetent and prejudicial testimony by respondent as to other accidents at the place in question.

(4) The verdict is excessive.

Defendant's first assignment of error is presented under three heads, first, that it was not negligent in building or maintaining the island in question; second, that it was not obliged to open the entire intersection of the cross streets for travel and was within its rights in providing a trafficway on either side of the island; third, that, if defendant was liable for maintenance of the island with or without lights, in view of the evidence in the record as to the maintenance of lights by it, it was necessary for the plaintiff to show not only that lights were absent at the time of the collision resulting in her injuries, but that they were absent for a sufficient length of time prior to such collision for defendant to have known of the absence thereof and to have replaced them and that she had in such respect failed. The three heads may be disposed of together.

The plaintiff upon this appeal, in her brief on resubmission, seemingly abandons all ground of negligence that might appear from the allegations of her petition, other than the ground that the defendant negligently maintained the island surrounded by the concrete curb upon the intersection of Holmes and Seventy-first Streets, in question, in that it failed to provide sufficient light or warning signals thereon so that the presence of said island and curb surrounding it upon said intersection was dangerous to persons using such streets and traveling thereon in motor cars as they approached them in the nighttime and so that their presence thereon at nighttime without lights or other warnings rendered such streets at such point dangerous and unsafe for public travel.

It would appear therefore that the negligence relied upon is negligence relating to a breach of duty by defendant in the maintenance of Holmes Street and the island and curb surrounding such island upon the intersection of Holmes Street with Seventy-first Street, after the said Holmes Street had been constructed and thrown open for public use with such island and curb thereon, without providing sufficient lights or other warning signals upon said island and street to warn travelers thereon of the presence of such island and curb, whereby it failed to maintain it in reasonably safe condition for travel at night.

A city is held, in respect to the establishment of public streets and in the construction thereof for public use, in the exercise of such powers to act in two capacities—first, governmental; second,

ministerial. In designating by ordinance that certain land within certain limits is a street, such land thereby becomes a public street upon the acquisition of the same by the city for such purpose but not necessarily an open street for public use. If afterward, provision is made by ordinance for its improvement for use as a street, it is not thereby, even, an open street for use.

In passing such ordinances, the city acts in a governmental or legislative capacity, in which capacity it exercises its discretion in defining the lines and extent of the street and in declaring in what manner and to what extent it shall be improved and thrown open for use. In so acting in such capacity in such matters, it is not answerable to an individual for a neglect of duty. [Ely v. St. Louis, 181 Mo. 723, 81 S. W. 168.] But, if, after the passage of the ordinance for the improvement of a street, it undertakes the work of constructing or reconstructing the street, as in the ordinance required, then it acts in its ministerial capacity; and, if in that capacity it is guilty of negligence to the injury of an individual, it is liable; and so, after the city has constructed a street or a sidewalk thereon and has thereby invited its use by the public, the city is bound to keep it in condition to be reasonably safe for use and is liable as for negligence if it fails to do so. [Ely v. St. Louis, supra; Bassett v. City of St. Joseph, 53 Mo. 290; Keating v. Kansas City, 84 Mo. 415; Kossman v. St. Louis, 153 Mo. 293, 54 S. W. 513; Smith on The Modern Law of Municipal Corporations, sec. 780; Boyd v. Kansas City, 291 Mo. 622, 237 S. W. 1001.]

■ After Holmes Street was constructed and thrown open for use and was being used by the public for travel, it was the duty of the defendant to maintain such street, together with the island and the curb thereon, in a reasonably safe condition for public travel. [Ely v. City of St. Louis, supra; Benton v. St. Louis, 217 Mo. 687, l. c. 700 et seq., 118 S. W. 418; Boyd v. Kansas City, supra; Gallagher v. Tipton, 133 Mo. App. 557, 113 S. W. 674; Berry v. Sedalia, 201 Mo. App. 436, 212 S. W. 34.]

The duty of maintaining a public street in a reasonably safe condition for public use and service after it has been constructed and thrown open for public use and the use thereof by the public invited and by the public accepted has uniformly been regarded as ministerial and one devolving upon a city in its ministerial capacity, for a neglect or breach of which it is liable; and this is true without regard to whether or not said street was constructed, in the first instance, in accordance with plans approved by the city in its legislative or governmental capacity. [Ely v. St. Louis, supra; Gallagher v. Tipton, supra; Hays v. Columbia, 159 Mo. App. 431, 141 S. W. 3; Trippensee v. Jefferson City, 174 Mo. App. 727; Nelson v. Kansas City,

170 Mo. 542, 157 S. W. 94; Berry v. City of Sedalia, supra; Boyd v. Kansas City, supra, l. c. 641 et seq.]

Judge BLAND states aptly in Barry v. Sedalia, 201 Mo. App. l. c. 439, ". . . it is well settled that the city has a right in its governmental capacity to adopt a general plan of street improvement and if the injury results from a danger inherent in the adopted plan the city is not liable, but it is equally established that if the danger has arisen from the negligent construction or maintenance of the plan, the city is liable."

This, of course, is because both the construction and the maintenance of the plan are to be regarded as ministerial.

■ The petition in the instant case, upon its face, may be construed as sufficiently broad to include a charge that the city was acting in a governmental capacity with respect to the construction of the island and curb at the point in question, at least as sufficiently broad to have permitted evidence that it was so acting with respect to the construction of the highways about said island and the curb adjacent to such highways, if it had been offered.

That it was so acting, however, is not shown by the evidence. The evidence does not show that the defendant city in its legislative or governmental capacity directed or authorized by ordinance the construction of the island and curb surrounding it, in question, or the deflection of Holmes Street from its original lines at such point and the widening of such street beyond its original curb lines around said island at the point where constructed or that by ordinance it provided the plan therefor, the materials with which the same were to be constructed, the dimensions of said island or its shape, or the width or character of the traveled way surrounding it.

Upon the other hand, the plan in evidence appears to have been made by the chief draftsman for the park board, a ministerial body of the defendant city; and such island and the roadways thereabout seem to have been constructed under the jurisdiction and direction of the park board and the supervision of its draftsman and other officers. The duties of the draftsman for the park board were directly under the jurisdiction of the park board, by which park board he was employed and in the department of which he had his offices. If the plan prepared by such draftsman, in evidence, according to which the island and other improvements thereabout were made, was ever submitted to the legislative or governmental authority of the defendant city and approved or was ever approved by such authority in any manner, it does not so appear; nor does it appear that any direction was ever made by such governmental or legislative authority for such improvement. It is clear that the park board, being only a ministerial body, does not and cannot exercise legislative and

governmental powers for the city. Such are to be exercised alone, by the executive and legislative authorities of the city, as the mayor and the council. Such powers are inherent in such authorities and are to be by them exercised in a discretionary manner and cannot be delegated to a ministerial body. [Boyd v. Kansas City, supra.]

■ It follows, therefore, that no question arises herein with respect to freedom from liability for negligence growing out of the construction and maintenance of the island and the roadways surrounding it at the place where constructed or the manner of construction thereof or the workmanship required therefor or the maintenance thereof as constructed, predicated upon such plan, as might have otherwise existed had the city been shown to have acted in its legislative and governmental capacities with respect to such plan and the making of such improvements, for the reason that the evidence does not show that it acted in any such capacities. It must therefore be held, upon the record, that the defendant city, with respect to all such matters, including the maintenance of the street, acted in its ministerial capacity.

■ In Boyd v. Kansas City, supra, it was held that a city is liable for negligence in the exercise of its ministerial powers in making improvements in its streets and for negligent failure to maintain them, after they are made, in such manner as to render the streets in a reasonably safe condition for public travel, citing in support of such holding Ely v. St. Louis, supra; Birkhimer v. Sedalia (Mo. App.), 200 S. W. 298; Gallagher v. Tipton, supra; Benton v. St. Louis, supra. It was there held that, in the erection of a bridge upon a street constructed according to plans prepared by ministerial officers of the city in the exercise of a discretion conferred upon them by ordinance in such manner that the bridge or some part of it was dangerous to travelers at night without lights thereon, the city failed in its bounden duty to keep the highway reasonably safe for travel and was guilty of negligence in opening and maintaining such bridge for public travel without such lights thereon, citing in support of such statement Loewer v. Sedalia, 77 Mo. 431; Birkhimer v. Sedalia, supra. It was said therein:

"It is familiar law that if the city itself, or through a contractor, in improving its streets, even according to a plan enacted by ordinance, makes an excavation into which a traveler on the street, ignorant of such excavation, falls at night, owing to the failure of the city or the contractor to property light the street or excavation, the city is liable if the traveler was himself exercising due care when he was injured. [Robison v. Kansas City, 181 S. W. 1005.] The same principle would seem to obtain where a structure is erected above the surface of the street according to plans adopted by the minis-

terial officers of the city. In either event, the city must properly light the dangerous place at night, in order to discharge its absolute duty to exercise reasonable care to keep its streets in reasonably safe condition for travel.

"The absolute duty of the city in this regard is well stated by LAMM, J., in his opinion in the Benton Case, supra, on page 700, as follows: 'A city owns and controls its streets as a trustee for the public. It, therefore, stands charged by the law with the primary and bounden duty of keeping them free from nuisances, defects and obstructions caused by itself or by third parties if it (in the latter instance) had actual or constructive notice thereof in time to abate the nuisance, remove the obstruction or repair the defect. It cannot shirk that duty, or shift it over to, or halve it with, others. So must is clear law in Missouri." [Welsh v. St. Louis, 73 Mo. 71.]

In the same case (Boyd v. Kansas City), in disposing of an instruction given therein for plaintiff upon the trial of the cause in the circuit court, predicated upon the negligent maintenance of said bridge with a girder thereon without lights or warning signals, at page 649 thereof, the court said, "The 'negligent maintenance' 'as aforesaid' could only be found in case the jury found the facts previously required, to-wit: That the viaduct was maintained without lights; that the absence of lights rendered said girder dangerous to travelers at night and that the city had knowledge of such dangerous condition or, by the exercise of due care, could have had knowledge thereof and remedied the same prior to the plaintiff's injury. If the jury found these matters of fact, then the city negligently failed as a matter of law to exercise reasonable care to maintain its streets in a reasonably safe condition for travel and if the accident to plaintiff was caused thereby, while she was in the exercise of due care herself, which the instruction also required the jury to find, plaintiff was entitled to recover."

The case of State ex rel. City of Springfield v. Cox (Mo.), 36 S. W. (2d) 102, in which the opinion and judgment of the Springfield Court of Appeals in the case of Mary E. Cunningham, respondent, v. the City of Springfield and Springfield Gas and Electric Company, appellants, was under review in certiorari, involved the erection and maintenance of a light pole in a public driveway without being fenced, guarded, or marked in any way so as to apprise persons using said driveway of its presence therein, which light pole seems to have been placed and maintained there by the defendant Springfield Gas and Electric Company with the permission and consent of the defendant city. In that case, the defendants or appellants, among other things, contended that the opinion of the Springfield Court of Appeals in holding them liable in damages to the plaintiff therein for injuries

sustained by her while a traveler upon the street in colliding with said pole was in conflict with certain opinions of the Supreme Court cited in the following particulars: (1) Neither the city nor the defendant electric company was liable for the condition of any obstruction in any portion of the driveway which, while within the street line, was outside the way dedicated to and improved for vehicular traffic by the city, citing Griffin v. City of Chillicothe, 311 Mo. 648, 279 S. W. 84; Clinkenbeard v. St. Joseph, 321 Mo. 71, 10 S. W. (2d) 54-60. (2) Since the iron pole in question was a lawful structure and since it was conceded that the city and the lighting company had the right to place the said pole where it was placed and since it therefore did not constitute a nuisance on a public street, they were under no duty to fence, guard, or mark said pole in any way so as to apprise a person using said driveway of its presence therein, citing Seibert v. Mo. Pacific Ry. Co., 188 Mo. 657, 87 S. W. 995; Julia Bldg. Ass'n v. Bell Telephone Co., 88 Mo. 258-266; Gay v. Mutual Union Tel. Co., 12 Mo. App. 485.

Judge RAGLAND for the court, in disposing of the first contention, said, "Griffin v. City of Chillicothe, and Clinkenbeard v. St. Joseph, supra, are not comparable on the facts. In the first the sole question presented for determination was whether a city was required to repair or guard a hole 'outside of the paved portion of the street and its curbing, which designated the place for and confined the limits of ordinary vehicular travel over the street.' In the second plaintiff received his injury through driving his automobile from the paved portion of the street over the curb and against an electric light pole alleged to have been negligently maintained in the parkway. But the parkway was covered with trees and shrubs, and obviously not intended for travel by automobile.

"The ruling in question clearly does not contravene our holding that a city has the right to improve and open for public travel only a portion of a platted street, and is not liable for injury to persons using that portion not opened or improved for public use."

In disposing of the second contention, the learned judge said, "The cases cited under this head are wide of the mark. In the case under review, plaintiff's action did not proceed on the theory that the placing of the light pole in the portion of the street used for vehicular travel in and of itself constituted an unlawful obstruction—a nuisance per se—but that defendants were negligent in failing to so mark or equip the pole that it would be visible to travelers on the street at all times of day and night and in all kinds of weather. The Court of Appeals, assuming, without deciding, 'that the city and the lighting company had the right to place the light pole where it was placed,' held that they were liable to plaintiff notwithstanding, if guilty of

negligence in the respects charged and such negligence was the proximate cause of his injuries. The principle is not new, nor is it in conflict with decisions of this court. See Boyd v. Kansas City, 291 Mo. 622, 237 S. W. 1001, and cases cited. The right to place the pole in the portion of the street used for vehicular travel, if defendants had such right, did not relieve the city of its duty to exercise ordinary care to keep the street reasonably safe for travel by day and night. Had the pole been equipped with some of the many devices used in modern highway maintenance to bring to the attention of travelers by night the existence of dangerous conditions, it might not have materially impaired the safety of the street; as it was, it was a dangerous obstruction.''

It was further said in the course of the opinion that the pole was in a public street and in the portion of it used for vehicular travel. It was not in a private driveway.

The negligence relied upon in that case, as charged in the petition therein, was that the light pole was negligently erected and maintained by defendants in a public driveway without being fenced, guarded, or marked in any way so as to apprise a person using said driveway of its presence therein. The Court of Appeals, upon a review of the evidence in the record, held, ''It is clear to us that the location and maintenance of this pole by defendants at the place where it was located with no provisions to make the pole visible from the west on a dark rainy night was sufficient to make the question of their negligence one for the jury.''

In the instant case, in addition to the evidence set out in the statement herein, there is evidence in the record tending to show that, about two o'clock in the early morning of March 9, 1930, mentioned in the petition, the plaintiff was driving from the south to the north, approaching the intersection of Holmes Street with Seventy-first Street where the island and the concrete curb surrounding it which the city had placed thereon was located. Holmes Street, as it approached said intersection, was upon a rising grade, which broke at intervals but continued practically to the island. The evidence further shows that, in approaching said intersection, the lights from plaintiff's car were thrown above the island and the curb surrounding it; that the plaintiff had no knowledge of the presence of said island and curb in the pavement upon the intersection or of the conditions there but was wholly ignorant thereof; that, at such time, there was no moon and there were no lights upon said island or curb or in the vicinity thereof to give a warning of their presence upon said intersection and neither were there warning signs or signals of any other character by which a traveler on said street after night might be warned of the conditions existing at such points; and that the

street extended north to such island and entirely surrounded it. The plaintiff testified that, in driving up Holmes Street, she was looking straight ahead of her; that, as she passed the point ninety-five feet south of the intersection, having failed to observe the island and curb at the intersection, she failed also to observe the beginning of the widening-out of the street at such place and the setting-out of the curb thereon but proceeded directly north along the original course of the street; that she did not detect the presence of the island and curb until she was almost immediately upon them, although she was looking in their direction; that that which turned out to be the island in the pavement appeared to her, when she was some fifty feet distant, to be a low place in the street; that, as she approached the intersection, her view was interfered with by a rising grade in said highway and she was prevented from seeing said island and curb until she passed over the crown of the grade, when she was a very short distance therefrom; that, when she had discovered it, it was too late for her to stop her car or to turn it so as to avoid striking the curb about said island; that she endeavored so to do but failed; that she was traveling at the rate of from twenty to twenty-five miles per hour; that she had had some experience in driving motor cars; that she was unable to see said island by reason of the absence of lights or other warnings and could not see it by the lights from her car by reason of the rising grade, as she came up, throwing such lights above the island and curb; that her car collided with the curb and was overturned and she was injured personally thereby. There was evidence tending to show that, at the time the street was opened across said intersection, the island had been created thereupon by the construction around it of the heavy concrete curb about seven inches in height; that the defendant city caused red lights or reflectors to be placed thereon, one each at the center upon the north, the east, the south, and the west. These reflectors were made of red glass and, accordingly, gave forth red lights which, at times, could be seen by travelers driving slowly a distance of several hundred feet away. However, it appears that travelers, in approaching said intersection on the highway, on frequent occasions ran over the curb into said island and upon or against said reflectors, knocking them out or down. So frequently did occurrences of this character happen that defendant ceased to rely upon said reflectors but adopted a system of hanging lanterns on said island at the points where the reflectors had been. Just how large the lanterns were, the record does not disclose. The evidence shows that, after adopting the system of hanging lanterns thereon, the same trouble continued as with the reflectors—that of travelers upon said highways running into said island and knocking the lights down. At least, the evidence shows

that they were frequently down; and such was the cause attributed therefor by those in charge of said island, whose duty it was to keep the same lighted. The evidence of plaintiff that, at the time of her collision with the curb about said island, there were no lights or other signals about to indicate to her its presence upon or about the intersection is undisputed. There was evidence upon the part of the city tending to show that it was the assigned duty of certain of its employees to visit said island each day to ascertain the condition of the lights thereon, to replace them when needed, and to see that said island was kept properly lighted at all times both day and night, and further evidence tending to show that such employees did so. At the time of plaintiff's injuries, it is not shown by the record how long the lights upon said island had been out or knocked down or how long complete darkness had prevailed there. An unlighted lantern was found lying near the scene of the collision by plaintiff's husband when he returned to such place, either later that night or early the next morning. It appears that, so frequent were the incursions from the street into the island and so frequently were the lights thereon knocked out or down, it was suggested by the city park foreman and superintendent under whose supervision said island was, at a meeting of the park board, that it, with the curb surrounding it, should be torn out on account of the hazard and danger its presence and maintenance presented. The street at such point and the island thereon and the curb about it were under the control of the defendant, and the fact that lights were placed thereon by it and that it attempted to keep them thereon is a proper matter for consideration in determining whether the defendant thereby recognized that lights were necessary to be maintained thereon. If it did recognize that they were necessary, it was its duty to maintain them. [Bachman v. Quincy, O. & K. C. Ry. Co., 310 Mo. 48-71, 274 S. W. 764; Munden v. Kansas City (Mo. App.), 38 S. W. (2d) 540; Ebert v. A. J. Kasper Co. (Mo. App.), 71 S. W. (2d) 859 l. c. 860.]

■ The plaintiff had a right to rely upon the street being in a reasonably safe condition for travel in the absence of knowledge to the contrary or of facts putting her upon inquiry. [Gray v. City of Hannibal (Mo.), 29 S. W. (2d) 710-713.] Not only did the plaintiff, in her testimony, testify that the island and curb upon the intersection could not be detected by approaching motorists at night in time to avoid striking them; but such was, in effect, the testimony of other witnesses who had approached said intersection during the nighttime. The evidence further shows that the lights placed by the city were not securely fastened, but were easily knocked down or over. The city park foreman within whose jurisdiction the intersection was at the time of plaintiff's injuries stated that the lights

were "down half—pretty near all the time." In his language, "They was down more than they was up. Of course, in the daytime they was up all the time but at nighttime they was down pretty near all of the time. Had trouble with them all of the time."

Knowledge of the park foreman as to the condition of the lights upon the island and the intersection was knowledge of the defendant city; and the facts to which the park foreman testified with reference to such lights were such as to charge the defendant city with notice that the reflectors that the city might have had at the place in question were not securely placed or fastened and might be knocked out or down any time and that they were not therefore reasonably sufficient for the required purpose of keeping the said island and intersection lighted at all times as a warning to travelers of the presence of such island upon the highways. The park foreman in his testimony spoke of conditions that had existed for two months or more prior to plaintiff's injuries. Not only did this foreman have knowledge of conditions, but he gave actual notice of such conditions to the park board and its chairman. The knowledge of the park foreman was in itself notice to the city. [Donahoe v. Kansas City, 136 Mo. 657, 38 S. W. 571.] Likewise, the knowledge the park board acquired from the park foreman at its official meeting constituted knowledge to the defendant city. [Davoren v. Kansas City, 308 Mo. 513, 273 S. W. 401.]

■ It is urged by defendant that plaintiff was not in the exercise of the highest degree of care required of an operator of a motor car upon the highway and that she was guilty of contributory negligence in looking only straight ahead as she was approaching the intersection in question and in not looking also to the sides. There are cases holding that, in the exercise of the highest degree of care, a motorist is required not only to keep a watchout ahead but laterally to the sides. [Hornbuckle v. McCarty, 295 Mo. 162, 243 S. W. 327; Aronson v. Ricker, 185 Mo. App. 528, 172 S. W. 641.] However, such was said with reference to the particular facts under review at the time. The facts in those cases tended to show that the injuries complained of might have been avoided if a watchout laterally had been kept and called for the application of such rule. The facts in this case do not justify the application of such rule. The injury to the plaintiff did not come from dangerous conditions to the side, but came from dangerous conditions directly in front of her. True, if she had looked to the side ninety-five feet south of the island and curb, she might have detected that the street was being widened at said point and that a paved roadway for travel led to the right therefrom; but, if she had been so looking laterally with darkness all around and without any light except the light from her car on the

street in front of her, she probably would not have detected such things. Being unacquainted with the condition and being without any knowledge of the island in the pavement or of conditions in front of or about her, had she detected them, she would probably not have known that she was expected to follow said way to the right to pass over the intersection. The paved and traveled portion of Holmes Street also followed the direct course of said street to the north up to the island, in which direction she was driving. This also answers defendant's contention to the effect that travelers are bound to take knowledge of the highway and its course when traveling thereon. They are so bound where they have such knowledge or where such knowledge is available but not, however, when totally without such knowledge and the means to obtain the same. The blue print in evidence, together with the testimony of the draftsman who made it, tends to show that the defendant city maintained for travel a circular paved area at least forty feet in width about the island intersection of said streets. In the darkness, without any knowledge of the situation previously or then obtainable, a traveler upon the street has the right to rely upon the fact that the street in its regular course in front is open and is in a reasonably safe condition for travel and has the right to proceed. Likewise, under the evidence, there is no merit in defendant's contention that plaintiff failed in the exercise of that degree of care required of her in that she did not keep as near the right side of the road as possible and next to the curb as she approached the intersection. The evidence does not show that there were other vehicles upon the street at such time or, if so, that plaintiff did not drive her car to the right thereof. Her injury does not appear to have been occasioned by the fact that other vehicles or travelers were thereon. She was proceeding north in an orderly manner on the street, as opened, without any knowledge that the curb thereupon had been deflected from its course north and been turned to the right.

Defendant contends and substantially argues that it was not required to open the entire intersection for travel but had the right to designate and devote a portion thereof for use as an island for utilitarian, ornamental, or other purposes and that, in so doing and in providing a trafficway around the island, it was acting within such right and was not liable, as for and for negligence, to any traveler upon said street for injuries incurred by running into said island or the curb surrounding it or by running at any other point thereon off the portion thereof designated for travel; and defendant cites Plunkett v. City of Aiken, 156 S. E. 245; Clinkenbeard v. St. Joseph, supra; Ely v. St. Louis, supra; Curran v. St. Joseph, 143 Mo. App. 618, 128 S. W. 203; Donnelly v. St. Louis (Mo.), 285 S. W. 1005;

Griffin v. Chillicothe, supra; Marshall v. Kansas City, 297 Mo. 304, 249 S. W. 82 in support thereof.

We are not unmindful of the principles announced in such authorities; and it may be conceded that the defendant city is within its right in bringing forward, designating, and improving parts only of a highway for travel and that it is not liable for damages to persons using other portions thereof than that improved for travel by the city, as declared by such authorities cited and as contended by defendant. It may further be conceded that a city has the right to designate certain portions of the street for purposes other than travel, as for a park for utilitarian or ornamental or other purposes, and thereby take it out of the street for travel. It is not, however, relieved of the duty to maintain such street in a reasonably safe condition for use. In the exercise of such right, at least in a ministerial capacity, it is required to do so in a manner consistent with its duty to maintain such street in a reasonably safe condition for use and travel. [Boyd v. Kansas City, supra; State ex rel. City of Springfield v. Cox, supra; Benton v. City of St. Louis, supra.] And if it in the exercise of such right in a ministerial capacity designates a portion of such street for certain purposes and toward the accomplishment of such purposes erects and maintains dangerous structures thereon or such as are dangerous to the safety of travelers thereon in the exercise of care required by law, it is liable for any negligence in so making such structures and for any negligent failure in connection with the maintenance thereof in a manner to render the street in a reasonably safe condition for public travel, to any one for damages for injuries occasioned by reason of such negligence. [Authorities cited last above; Birkhimer v. City of Sedalia, supra; Gallagher v. Tipton, supra; Berry v. Sedalia, supra; Ely v. St. Louis, supra.]

██ There was evidence tending to show that the island structure with its surrounding curb, in question in this case, was dangerous to travelers upon the street, especially so in view of the fact that it was at times unlighted and was without sufficient lights, warning signals, or other devices to warn travelers upon the street of its presence or to indicate its presence to them and that it was so located that its presence could not be made known to such travelers if ignorant thereof until too late for use of such knowledge to be made by reason of the rising grade in the street, as it was approached, which cut out its view. Besides, a concrete curb only a few inches high, with the dirt upon the island as a background, in the middle of a concrete pavement of practically the same color and character, would ordinarily be most difficult of detection by one ignorant of its presence there, even when close to it, without some light or other sign thereon

or about to attract the traveler's attention. So far as the record discloses, there were no trees or shrubbery upon the island or structure of any kind to attract attention. There were no lights or warning-signs upon it or upon the approaches thereto. The island itself was a mere barren waste of soil in the middle of the concrete pavement with the curb around it. No one ignorant of its presence would suspect it of being there; no one ignorant of its presence had an opportunity of knowing it was there until upon it. The facts in evidence show that, from the very beginning, travelers with motor cars constantly collided- with and made incursions into it. It was impossible to keep lights thereon by reason of motorists running into and striking them. This can be accounted for only upon the theory that, as located, considering the lay of the ground and the rising grade of the street, its presence in the absence of lights or warning signals could not be known to such motorists in time to permit them to stop their cars and that it was therefore dangerous to travelers in the nighttime, located as it was.

So far as the further contention that plaintiff was not in use of that part of the street designated, paved, and provided by defendant city for travel is concerned, it is not justified by the facts in the record. The paved, traveled way, forty feet in width, surrounded the island, at least up to the curb around it. Such is shown by the blue print in evidence. Holmes Street, as it came north to said curb and island, formed a part of the forty foot street around the island on the south. There was nothing to prohibit the use of it, even in the daytime, directly up to the curb. It was there thrown open for use; and there was nothing, even in the daytime, to indicate that it was not for use up to such curb. To one ignorant of the situation, there was nothing under the darkness of the night to indicate that it could not be and was not intended to be used entirely across the intersection until such a one was upon it and it was too late to stop. Such contention, under the facts in the record, is not available to defendant. The statement of Judge RAGLAND in State ex rel. City of Springfield v. Cox, supra, with reference to the facts in that case there under review and the facts in the case of Clinkenbeard v. St. Joseph, supra, to the effect that they were not comparable, is applicable here. We have an entirely different situation as to facts from any of the cases relied upon by defendant under this head.

Defendant contends that, in view of the evidence in the record with reference to the lights which had been placed upon the island and the difficulty it had in maintaining them, plaintiff was required to show not only that there was no light upon the island at the time she collided with the curb and island and was injured, but to show that said island and curb had been unlighted and without

warnings thereon for a sufficient length of time prior to the collision and her injury for defendant, in the exercise of ordinary care, to have known of such fact and had reasonable time thereafter within which it might, in the exercise of ordinary care, have reasonably corrected such situation. There is evidence in the record tending to show that the defendant recognized the necessity for lighting the island from the beginning, in order that the streets about it might be maintained in a reasonably safe condition for travel, but that it never, at any time, installed a lighting system sufficient for such purpose or put a system in operation sufficient therefor. There was evidence tending to show that such lights as were installed were small and insecurely placed on small iron poles at a height from which they could not readily be seen by travelers upon the highway approaching the island, by reason of the rising grade of the street. They were frequently run into and knocked down by motorists. There was evidence tending to show that they were down a greater part of the time between the time they were first placed and the time of plaintiff's accident, covering a period of several months. Red glass reflectors, ten or twelve inches in width, were first tried; and later their use was supplanted, or supplemented at least, by the use of lanterns which were frequently found out or knocked down. Testifying for plaintiff, Fred H. Carlson, superintendent with the park department of the west park district in which the island in question was situated, said that he experienced so much trouble with motorists running into the island and knocking the lights out or down that he brought the situation to the attention of the chairman of the park board and the danger and hazards presented by it and advised him to have the island torn out.

It was the duty of the defendant city to have lighted such island in a manner commensurate with the danger and requirements of the situation. It stood charged by the law with the primary and bounden duty of keeping the street at such point in a reasonably safe condition for use and travel at all times, both day and night. Under the circumstances in the record, it could do so only by maintaining upon said island lights or other warning signals at all times, substantially and securely placed, of sufficient power and character for the purposes intended and necessary to be accomplished and served. Here, it had notice of the dangerous situation for weeks prior to plaintiff's injuries—notice that lights were necessary at all times, especially at night; that its lights were insufficient for the proper lighting of the streets at such point or giving warning of the dangerous situation even when up; that such lights placed there by it were being knocked down and out practically every day and could not be kept up; that they were down over half of the time. Yet it allowed such condition to continue without any apparent effort to

better it, other than to change from the use of stationary reflectors to lanterns loosely swung upon the island or set against the curb or to supplement the use of such reflectors with the use also of lanterns. It continued the practice of visiting the island every day, replacing the lights thereon and lighting and swinging lanterns thereon and giving no further attention to the situation until the next day, although it knew that the lanterns placed and other lights were liable to be knocked down or out at any moment. Here was a continuously menacing condition, of which it had full notice through its officers and agents at all times. Under such circumstances, there rested no duty upon the plaintiff to make the further showing as contended by defendant. The defendant had sufficient notice of the menancing condition for a sufficient length of time prior to plaintiff's injuries within which to have remedied it had it cared to do so. It was under the legal duty of maintaining lights or signals at all times at the point in question as a warning to travelers upon the street; and it should have used ordinary care commensurate with such duty. That the conclusion reached is proper, we think, is fully justified by what is said in the opinions of both Judge LAMB and Judge WOODSON in Glaser v. Rothschild, 120 S. W. 1, 221 Mo. 180 and in Benton v. St. Louis, 217 Mo. 687, l. c., 700, 118 S. W. 418.

It follows that it must be held that the instruction in the nature of a demurrer at the close of the whole evidence was properly ruled by the trial court.

■ Defendant assigns as error the action of the trial court in giving Instruction One for plaintiff. We have examined into all complaints made by it concerning such and fail to find any of them well taken. Such instruction was authorized as being not only within the issues raised by the pleadings but by the evidence also. It required the jury, before fastening liability upon defendant, to find that Holmes and Seventy-first streets were public streets in defendant city open for public use; that, in establishing the same, the defendant had negligently and carelessly constructed and maintained the island obstruction and curb complained of upon such streets and at the intersection thereof without lights or signals reasonably sufficient to warn travelers at night of the existence of such island and curb on such intersection and of the danger of colliding therewith, if there was such danger, to persons lawfully using the streets by automobile at night by reason of the lack of sufficient lights or other signals thereon; that the city knew, or by the exercise of reasonable care and caution could have known, of the dangerous condition at nighttime of said streets in time, by the exercise of ordinary care and diligence, to have remedied the same before the time of plaintiff's injuries; that plaintiff, while driving her automobile on Holmes Street, on March 9, 1930, and attempting to

cross said intersection and while exercising the highest degree of care for her safety, so drove the same as to collide with said island and curb; that plaintiff was thereby injured; and that such injuries were the direct result of the negligent maintenance of said island and curb in said street without reasonably sufficient lights or other warning signals. There was ample evidence in the record upon which the jury was authorized to make all of such findings, and plaintiff's theory of defendant's negligence in and upon such facts found a sufficient basis in the allegations of her petition. The instruction is not open to the criticism that it submitted the negligence of defendant city in maintaining the island and curb thereon without making reference to lights. The reference to the maintenance of said island and curb in said instruction was throughout in connection with the dangerous conditions created by their presence at the point where located when not sufficiently lighted, and there was nothing contained therein by which the jury was or might have been misled as to the negligence actually being submitted to it. The whole instruction is to be read together and not mere isolated parts alone.

The defendant complains of the often repeated use therein of the words ''concrete obstruction and barrier'' when referring to the island and curb. True, other words might have been more appropriately used in such connection. However, whether the island and curb were obstructions and barriers was, in each instance, when such words were used, left for the determination of the jury. We fail to see where defendant was prejudiced by the use therein of such words in the connection and the manner in which they were used.

The defendant's criticism that the instruction was not authorized because of the lack of evidence in the record to show how long the island and curb had been and remained unlighted at the time of the accident and, consequently, of evidence upon which to charge defendant with actual or constructive notice of their unlighted condition, is not well taken. The matter of the necessity for such evidence in this case is fully discussed and disposed of under another head in this opinion, contrary to defendant's contention with respect thereto.

■ Error is assigned by defendant as to the admission upon the trial of evidence with respect to other accidents at the place in question. We think such evidence competent as tending to show the dangerous condition. [Hebenheimer v. St. Louis, 269 Mo. 92, 189 S. W. 1180; Charlton v. St. Louis & S. F. R. Co., 200 Mo. 413, l. c. 422, 98 S. W. 529; Golden v. Clinton, 54 Mo. App. 100.] We do not regard the evidence of witness Carlson as to prior accidents objectionable as hearsay. He acquired such information in the performance of his official duties as park foreman or superintendent of parks in the western district of the city, in which district the island in question was located; and such accidents thereby came under his

jurisdiction. His duty was that of the maintenance of parks in the district, upon the streets or at other points. The matter of maintaining lights on said parks, where necessary, was a part of his duty; and knowledge that accidents had frequently occurred through motorists running their cars into said island or against the curb and knocking the lights thereon down came to him in the prosecution of his duties. The defendant contends that it cannot be assumed that such incursions into the island were not the result of carelessness upon the part of the motorists. True. Neither can it be assumed that they were the result of the carelessness of such motorists. There was no evidence as to the circumstances under which such previous accidents happened. Where, however, they were of such frequency, it could not, in the absence of evidence, be readily assumed that all of them resulted from the carelessness of the drivers. Such would hardly be justified as a result of ordinary human experience.

Defendant contends that the verdict was excessive. We are unable to concur in such contention. There was an ample basis in the evidence for a verdict in the amount returned. There was evidence that plaintiff's injuries were not only severe but painful. She was rendered practically unconscious from the date of her injury on the morning of March 9, 1930, until the twelfth or the thirteenth. She suffered with pain in her head and ribs. It was thought that two ribs were broken. She received a deep cut upon her right leg, with which she was troubled for some months afterward, and numerous other smaller cuts and bruises. She remained in the hospital about two weeks; and, after being returned to her home at Chatham Hotel, she was confined to her bed for a number of months. In June, she had to submit to an operation on her leg, by reason of the wound thereon; and blood clots and dead tissue were found therein and removed. Such operation caused much pain. She was subject to severe headaches and nervous spells between her menstrual periods which she had not experienced previous to her injury. She suffered with deranged menstrual conditions from the time of her injury to the time of the trial—the result of a concussion upon the brain received, with other injuries, in the accident. This concussion also materially otherwise affected her. Her physician testified that her injuries in this respect were, in his opinion, permanent.

We have disposed of all assignments of error made. An examination of the record fails to reveal any error upon the trial. The verdict and judgment were for the right party. The judgment of the trial court should be and is affirmed. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of REYNOLDS, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.